UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:20-cv-24342-RNS

| | |
|---|---|
| PAYRANGE, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| KIOSOFT TECHNOLOGIES, LLC and | ) |
| TECHTREX, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS KIOSOFT TECHNOLOGIES, LLC AND
TECHTREX, INC.'S MOTION TO DISMISS PLAINTIFF'S
<u>CLAIM FOR INFRINGEMENT OF THE '833 PATENT (COUNT I)</u>**

## **TABLE OF CONTENTS**

Memorandum of Law ...................................................................................................... 1

I.    INTRODUCTION ................................................................................................... 1

II.   BACKGROUND ...................................................................................................... 2

    A.   The '833 Patent. ............................................................................................... 2

    B.   Plaintiff's Interpretation Of The Claims Of The Asserted Patent. ..................... 6

III.  LEGAL STANDARD .............................................................................................. 7

    A.   Invalidity Under 35 U.S.C. § 101 ..................................................................... 7

    B.   Dismissal Under § 101 At The Pleading Stage. ................................................ 8

IV.   Argument ................................................................................................................ 10

    A.   The Claims Of The '833 Patent Are Directed To An Abstract Idea. ............... 11

    B.   The Claims Of The Asserted Patent Do Not Add An Inventive Concept To The Abstract Idea. ....................................................................................................... 16

    C.   The Dependent Claims do not Cure the Deficiencies of the Independent Claims ........... 18

V.    CONCLUSION ...................................................................................................... 20

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1128 (Fed. Cir. 2018) ........................................................................................................8, 9

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ...........................................................................................................8

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1260 (Fed. Cir. 2016) ............8, 17, 20

*Alice Corp. Pty. v. CLS Bank Int'l*, 573 US 208, 217, 134 S. Ct. 2347, 2354 (2014)................*passim*

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ...................................................................2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ................................................2

*Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ...........................................9

*BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1291, n.1 (Fed. Cir. 2018) ...............................20

*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 17-cv-5169-GW(FFM), 2018 WL 2558385, at *8 (C.D. Cal. Feb. 12, 2018) ...........................................................10

*Clarilogic, Inc. v. Formfree Holdings Corp.*, 681 Fed. Appx. 950, 954 (Fed. Cir. 2017) ....................13

*Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) ........................................................................................................8, 9

*Credit Acceptance Corp. v. Westlake Services*, 859 F.3d 1044, 1056 (Fed. Cir. 2017) ...................17

*Elect. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-56 (Fed. Cir. 2016) ...........................13

*Ex Parte Latoya H. James* 2019 WL 2763407 at *4-*6 (PTAB June 21, 2019)...........................18

*Ex Parte Oliver S. C. Quigley, Nathan McCauley, And Bob Lee* 2019 WL 366814 (Patent Tr. & App. Bd. January 15, 2019)...........................................................................15

*Ex Parte Rajen S. Prabhu And David Chan*, 2018 WL 2131670 (2018)...........................................14

*Fidelity National Information Services, Inc. v. DataTreasury Corp*., CBM2014-0020, Op. at 15-17 (PTAB Apr. 29, 2015) ...........................................................................20

*Fort Props, Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1322 (Fed. Cir. 2012) ........................17

*Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016) ...................................8

*In re TLI Communs. LLC Patent Litig.*, 823 F.3d 607, 613-14 (Fed. Cir. 2016) ...........................9, 13

*Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1331 (Fed. Cir. 2017).....................13

*Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016) .....................7

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.,* 876 F.3d 1372, 1374, 1379 (Fed. Cir. 2017) ........................................................................................................11, 12

*Inventor Holdings, LLC v. Gameloft, Inc.*, 135 F. Supp. 3d 239, 253 (D. Del. 2015) .........................17

*IPLearn-Focus, LLC v. Microsoft Corp.*, No. 14-cv-00151-JD, 2015 WL 4192092, at *3 (N.D. Cal. July 10, 2015) .................................................................................9

*Maxon, LLC v. Funai Corporation, Inc.*, 726 Fed. Appx. 797, 800 (Fed. Cir. 2018)...........................13

*Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 72 132 S. Ct. 1289, 1296-97 (2012) ........................................................................................................7

*Mobile Telecomms. Techs., LLC v. United Parcel Serv., Inc.*, 173 F. Supp. 3d 1324, 1336 (N.D. Ga. 2016)...........................................................................................1

*Tranxition, Inc. v. Lenovo (United States) Inc.*, 664 F. Appx. 968, 971 (Fed. Cir. 2016)...................8

*Werteks Closed Joint Stock Co. v. Vitacost.com, Inc.*, No. 16-CV-60695, 2016 WL 5076169, at *3 (S.D. Fla. Sept. 20, 2016)...........................................................2

*Wireless Media Innovations v. Maher Terminals, LLC*, 100 F. Supp. 3d 405,
410 (D.N.J. 2015) ................................................................................................................... 10


**FEDERAL STATUTES**

Fed. R. Civ. P. Rule 12(b)(6) ............................................................................... *passim*
35 U.S.C. § 101 ....................................................................................................... *passim*

<u>**MEMORANDUM OF LAW**</u>

**I.    INTRODUCTION**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court should dismiss PayRange, Inc.'s original Complaint [ECF No. 1] filed in this action because PayRange, Inc's ("Plaintiff") patent, U.S. Patent No. 10,719,833 (the "'833 Patent") asserted against Defendants KioSoft Technologies, LLC and TechTrex, Inc. (collectively "KioSoft"), is directed to unpatentable subject matter under 35 U.S.C. § 101.  As district courts in the Eleventh Circuit have recognized, a § 101 defense "raises a threshold question of patent validity" that is "fundamental to [a plaintiff's] ability to recover."  *Mobile Telecomms. Techs., LLC v. United Parcel Serv., Inc.*, 173 F. Supp. 3d 1324, 1336 (N.D. Ga. 2016).  Ever since the Supreme Court's landmark decision in *Alice Corp. Pty. v. CLS Bank Int'l*, federal district courts have routinely dismissed cases at the outset under Rule 12 when faced with other patents presenting ineligible abstract ideas.  573 U.S. 208, 217, 134 S. Ct. 2347, 2354 (2014).  KioSoft respectfully requests that the Court rule that the '833 Patent is not patent eligible and dismiss this case.

Rather than presenting a technical solution to a technical problem, the '833 Patent is directed only to the abstract idea of authorizing and then performing a financial transaction.  The '833 Patent therefore claims the very same process that happens when a store checks a customer's credit and allows a customer to make a purchase.  That abstract idea is performed in the '833 Patent using generic and conventional wireless and mobile device technology*, i.e.*, using a mobile device having a display, processor, and memory, and conventional computer technology.  Even worse, the conventional wireless and mobile device technology of the '833 Patent does nothing more than perform the abstract, unpatentable tasks of processing, authorizing, and executing a payment.

Under controlling Supreme Court and Federal Circuit law, patents like the '833 Patent that attempt to claim an abstract idea performed using a mobile device, are invalid.  The Supreme

Court's *Alice* decision makes clear that a patent cannot be directed to the mere automation of an abstract idea that could be performed manually.  Yet the '833 Patent does just that:  it uses common, off-the-shelf computing components to process, request, and authorize payments to be made to retail machines.

In addition to the abstract nature of the '833 Patent, the Complaint does not meet the pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) because the Complaint does not allege a factual basis for Plaintiff's infringement claim for each of the '833 Patent claims alleged to be infringed.  *See, e.g. Werteks Closed Joint Stock Co. v. Vitacost.com, Inc.*, No. 16-CV-60695, 2016 WL 5076169, at *3 (S.D. Fla. Sept. 20, 2016).  Despite alleging infringement of "at least claim 1" of the '833 Patent, the Complaint does not even attempt to allege any factual basis for any claim other than claim 1.  The Court should therefore dismiss the Complaint for failure to state a claim with respect to the unspecified claims of the '833 Patent.

## II.     BACKGROUND

### A.     The '833 Patent.

The '833 Patent is titled "Method and System for Performing Mobile Device-to-Machine Payments."  Dkt. 1-1.  The '833 Patent is directed to the use of conventional electronic devices to perform the abstract tasks of obtaining permission for a financial transaction and then performing the transaction.  The '833 Patent does not claim any novel technology.  The '833 Patent merely uses well-known mobile devices to communicate in a conventional manner and to accomplish a transaction in a conventional manner.

The '833 Patent contains 27 claims.  Three of these claims are independent claims directed to essentially the same subject matter, and the remaining claims are dependent on these

independent claims.  Plaintiff only identifies claim 1 and fails to plead any facts supporting its infringement contentions related to the other claims. Dkt. 1 at ¶¶ 28, 29, 31.

The '833 Patent is directed to a method for using a mobile device to authorize a purchase at a vending machine and then to execute that purchase.  Dkt. 1-1 at Abstract.  The '833 Patent emphasizes its use of conventional technology to perform abstract tasks at the end of its Background section, noting, "[a]s the number of people with Internet-connected mobile devices proliferates, so does the variety of uses for such devices.  Mobile payment is a logical extension." Dkt. 1-1 at 1:57-59.  In describing its purported invention, the '833 Patent notes that "the mobile-device-to-machine payment processing system disclosed herein allows a user (having a mobile device 150 with a mobile application 140 thereon) to make a cashless purchase from a payment accepting unit 120 (having an adapter module 100 associated therewith)."  Dkt. 1-1 at 2:57-59.

The '833 Patent achieves this fundamentally abstract goal by providing a "system for facilitating a cashless transaction for purchase of at least one product or service" through a "mobile device that has both short-range communication technology and long-range communication technology." Dkt. 1-1 at 3:49-55.  The '833 Patent's disclosed system identifies a local "automated retail machine" (*e.g.*, vending machine) with which a mobile device may complete a transaction based at least in part on a "transmission" from the automated retail machine.  Dkt. 1-1 at claim 1. The '833 Patent does not recite any technological limitation on how this step is performed.  Dkt. 1-1 at claim 1.  In response to this identification step, the automated retail machine requests that the mobile device obtain authorization for a purchase from a server.  *Id.*  The mobile device then requests and receives authorization from the server, following which, in response to an unspecific "trigger condition," the mobile device executes the purchase.  *Id.*

These steps present nothing other than an entirely abstract financial process that has been performed for centuries:  (1) A customer identifies a vendor; (2) obtains permission for a purchase from a third party (*e.g.,* calls a bank to verify a balance, conducts a credit check, asks his mother if he can buy something in the store); and (3) performs the transaction.  In the '833 Patent, these abstract well-known steps are performed with well-known, generic mobile technology.

 Indeed, the '833 Patent specification acknowledges that the components of the claimed method and system are conventional computer and/or mobile device components that operate in their normal capacity to perform conventional computing activities.  For instance, the specification of the '833 Patent concedes that "automatic retailing machines" "have been around for thousands of years."  Dkt. 1-1 at 1:25-26.

The '833 Patent further emphasizes that the claimed mobile device and its communications with the other components of the system are conventional and based on pre-existing technology.  Although the claims use the term "automatic retail machines," and the background of the invention equates "automatic retailing machines" with vending machines (which dispense goods), given that: (A) the claims recite that the automatic retail machines can provide services (Dkt. 1-1 at claim 1) and (B) Plaintiff has alleged that these "retail machines" include laundry washers and dryers (which machines render services rather than goods), it is unclear what PayRange contends "automatic retail units" to cover.

When describing "payment accepting units" that can accept payment for services and goods, the '833 Patent notes that these payment accepting units are entirely conventional and generic and not limited:

> Payment Accepting Unit 120 (or Machine 120): A payment accepting unit 120 (or machine 120) is equipment that requires payment for the dispensing of a product and/or service.  Payment accepting units 120 may be vending machines, parking meters, toll booths, laundromat washers and dryers, arcade games, kiosks, photo

---

booths, toll booths, transit ticket dispensing machines, and other known or yet to
be discovered payment accepting units 120.

Dkt. 1-1 at 13:4-6.  To the extent that PayRange is alleging that "automatic retailing units" are

merely vending machines that dispense goods, then automatic retailing units are conventional

machines.  Dkt 1-1 at 1:25-34.

Concerning the "communications" contemplated by the '833 Patent (the claimed step in

which a mobile device identifies the retailing unit based on a transmission and subsequent steps

involving communications among the device, retailing unit, and server), these communications

contemplate the use of entirely conventional communication protocols not limited to any particular

technology:

> The terms "messages," "communications," "signals," and/or "transmissions"
> include various types of information and/or instructions including, but not limited
> to, data, commands, bits, symbols, voltages, currents, electromagnetic waves,
> magnetic fields or particles, optical fields or particles, and/or any combination
> thereof. Appropriate technology may be used to implement the "communications,"
> "signals," and/or "transmissions" including, for example, transmitters, receivers,
> and transceivers.

Dkt. 1-1 at 17:25-35.  The '833 Patent further elaborates on the generic and unrestricted nature of

the communication protocols used by the claimed "communications unit":

> Communications between user mobile devices 150 and the servers (e.g. a system
> management server 130 and/or a funding source server 160) take place using long-
> range communication technology.  Communications between user mobile devices
> 150 and the adapter module 100 of the payment accepting unit 120 take place using
> "short-range communication technology" (e.g. Bluetooth (e.g. Bluetooth 4.0,
> Bluetooth Smart, Bluetooth LE (Low Energy), near-field communication, Ultra
> Wideband (UWB), RFID, infrared wireless, induction wireless, or any wired or
> wireless technology that could be used to communicate a small distance (e.g.
> approximately a hundred feet or closer) that is known or yet to be discovered).

Dkt. 1-1 at 13:40-55.

The '833 Patent emphasizes that the claimed server, which provides authorization, is merely a "host processing server" that processes payment. Dkt. 1-1 at 13:63-14:7. The server is not tethered to any particular technical feature. *Id.*

As well, the claimed "trigger" condition required for the payment transaction to be completed can consist of anything from the proximity of the user to the vending machine, to a selection of something on the mobile application, or even a manual selection of an item to purchase on the automatic retail machine. Dkt. 1-1 at 20:58-21:50. All of these options represent conventional technology applied in a conventional way to accomplish the abstract task of paying for goods or services using a conventional mobile device.

The '833 Patent does not claim to have invented a new type of automated retail machine or a technological improvement for processing or authorizing payments, or to have made any other improvements to computer or mobile technology. The '833 Patent merely takes the longstanding abstract process of seeking authorization for a transaction from a third party and conducting that transaction and performs that abstract process with generic and unspecified mobile technology.

**B.      Plaintiff's Interpretation of The Claims of The Asserted Patent.**

Plaintiff accuses KioSoft of infringing "claim 1 of the '833 Patent" by "making, using, selling and/or offering for sale products with built-in mobile payment functionalities." Dkt. 1 at ¶ 28. This charge is tantamount to claiming that no one in the U.S. may offer or sell products with built-in mobile payment functionalities without Plaintiff's approval. The Court should reject Plaintiff's claim that Plaintiff owns this abstract concept.

Plaintiff does not allege infringement of any specific claims other than claim 1. Plaintiff hopes that the Court will interpret claim 1 of the '833 Patent in the Complaint to apply broadly to any product that "perform[s] a method of payment processing prior to user selection of any items or services provided by an automatic retail machine." Dkt. 1 at ¶ 29. Mysteriously, Plaintiff

attempts to support this interpretation by copying and pasting the language of claim 1 and inserting a non-party's (CSC ServiceWorks) product in an effort to show that KioSoft uses the same or a similar method. *Id.*

Plaintiff's Complaint confirms that Plaintiff is asking this Court to interpret the claims of the '833 Patent broadly enough to cover any and all devices, machines, computers, and other products that process a payment prior to user selection of any items provided by an automatic retail machine. Plaintiff is not entitled to, and the law prohibits, Plaintiff's requested interpretation.

## III.    LEGAL STANDARD

### A.    Invalidity Under 35 U.S.C. § 101.

Section 101 of the Patent Act defines patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Abstract ideas, like laws of nature and natural phenomena, are exceptions to these statutory categories of patentable subject matter because abstract ideas, laws of nature, and natural phenomena are the "building blocks of human ingenuity." *Alice*, 134 S. Ct. at 2354. The claims of the '833 Patent fall into the "abstract ideas" category, which category embraces "fundamental economic practice[s] long prevalent in our system of commerce," including "longstanding commercial practice[s]." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016).

Courts apply a two-step test to determine whether patent claims are directed to patent-ineligible subject matter, asking: (1) are the claims at issue directed to a patent ineligible concept; and (2) are there additional elements in the claims that transform the nature of the claims into a patent-eligible application, *i.e.*, "a search for an inventive concept." *Alice*, 134 S. Ct. at 2355; *see also Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 72 132 S. Ct. 1289, 1296-97 (2012). For a claim to be patent-eligible, its "inventive concept" must be found in the claim itself,

---

not in an unclaimed embodiment in the specification. *See Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013). Importantly for the inquiry required by this Motion to Dismiss, claim "elements [that] involve 'well-understood, routine, [and] conventional activity . . . do not constitute an 'inventive concept.'" *Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1128 (Fed. Cir. 2018).

To be sufficiently inventive to be worthy of a valid patent, claims "implemented on a computer" must be "directed to an improvement to computer functionality versus being directed to an abstract idea." *Tranxition, Inc. v. Lenovo (United States) Inc.*, 664 F. Appx. 968, 971 (Fed. Cir. 2016) (citation omitted); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1260 (Fed. Cir. 2016) (contrasting computer-implemented inventions "directed to an improvement in the functioning of a computer," which function-improving inventions are patentable, with claims that "simply add [] conventional computer components to well-known business practices" or "consist only of 'generalized steps to be performed on a computer using conventional computer activity,'" which conventional technology disclosures are not patentable) (citations omitted).

**B.      Dismissal Under Section 101 at The Pleading Stage.**

It is well-settled that courts may properly determine § 101 patentability at the pleading stage, including relative to a Fed. R. Civ. P. 12(b)(6) inquiry. *See Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under . . . § 101 on a Rule 12(b)(6) motion"); *see*, *e.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (affirming a Rule 12(b)(6) dismissal due to lack of patentable subject matter under 35 U.S.C. § 101).

Although the *Alice* step-two determination of whether something is "well-understood, routine, and conventional" is an issue of fact, the Federal Circuit has confirmed that "not every §

101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).  Rather, when, as here, claims recite only routine computer components for performing conventional computer functionality, no underlying factual disputes exist to prevent a § 101 determination on the pleadings. *See, e.g., In re TLI Communs. LLC Patent Litig.*, 823 F.3d 607, 613-14 (Fed. Cir. 2016) ("fact finding outside the record" was unnecessary to decide Rule 12 motion under § 101 because the specification described the invention "as either performing basic computer functions such as sending and receiving data, or performing functions 'known' in the art... [*e.g.*] 'well-understood, routine, activit[ies] previously known to the industry'").  Likewise, this Court can assess whether the claim elements are well understood, routine, or conventional "based on the sources properly considered on a motion to dismiss, such as the complaint, the patent, and materials subject to judicial notice." *Aatrix Software, Inc.,* 882 F.3d 1121, 1128 (Fed. Cir. 2018).  Resolution of the question of patent eligibility through the present Motion to Dismiss is appropriate in view of the controlling law.

The Court need not defer this § 101 ruling until after claim construction.  The Federal Circuit has stressed that "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Content Extraction*, 776 F.3d at 1349.  In this case, "the basic character of the claimed subject matter is readily ascertainable from the face of the patent, and the parties' disputed constructions in no way affect the Court's analysis." *IPLearn-Focus, LLC v. Microsoft Corp.*, No. 14-cv-00151-JD, 2015 WL 4192092, at *3 (N.D. Cal. July 10, 2015; *see also Content Extraction*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (claims invalid because they are directed to abstract idea of collecting data, recognizing certain data within the collected data set, and storing

that recognized data in a memory).  Therefore, construing claims before ruling on a §101 motion is "particularly unnecessary."  *Id.*

While the parties will likely disagree on claim construction when it comes to issues of infringement, resolution of such disputes is not necessary to rule on the instant motion.  Claim construction for the '833 Patent is irrelevant to the § 101 determination.  *See Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 17-cv-5169-GW(FFM), 2018 WL 2558385, at *8 (C.D. Cal. Feb. 12, 2018) (claims require construction before ruling on a § 101 motion "only where claim construction disputes are relevant to the § 101 question.").  Specifically, the '833 Patent claims are directed to an abstract idea regardless of whether the Court construes the claim terms broadly or narrowly.   *See, e.g., Wireless Media Innovations v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 410 (D.N.J. 2015) (no need to construe claims when "the computerized process disclosed in the [] patent is invalid under § 101, under any reasonable construction").  "[T]he Federal Circuit has acknowledged that, for purposes of making a determination at the pleading stage, a district court may still consider a 12(b)(6) motion so long as the court construes the claim terms in the manner most favorable to the non-moving party, *i.e.*, the patent owner."  *Cedars Sinai*, 2018 WL 2558385, at *8 (citations omitted).

## IV.    ARGUMENT

The claims of the '833 Patent are, by any accounting, unpatentable.  The claims are directed to the unpatentable abstract idea of authorizing and performing a financial transaction.  The '833 Patent's claims disclose no inventive concept.  Instead, the claims recite only generic mobile communication concepts used to implement the abstract idea of paying for a good or service once a third party has authorized that payment.

### A.    The Claims of The '833 Patent Are Directed to An Abstract Idea.

Claim 1 of the '833 Patent (the only claim Plaintiff specifically accuses KioSoft of

infringing) recites the following method steps utilized by an "automatic retail machine" and a

mobile device having a display, processor, and memory:

> (a) identifying the automatic retail machine based at least in part on a
> transmission received from an electronic payment device of the automatic retail
> machine;
>
> (b) in response to identifying the automatic retail machine, obtaining, from the
> electronic payment device, a request, via the communications unit of the mobile
> device, to preemptively obtain authorization to make funds available for a
> cashless transaction with the automatic retail machine;
>
> (c) sending, to a server, the request via the communications unit of the mobile
> device;
>
> (d) in response to sending the request to the server, obtaining from the server an
> authorization grant of an amount of funds for use in conjunction with the cashless
> transaction with the automatic retail machine;
>
> (e) detecting, by an application executing on the mobile device, a trigger
> condition to perform the cashless transaction with the automatic retail machine;
> and
>
> (f) in response to detecting the trigger condition, sending to the electronic
> payment device the authorization grant to enable completion of the cashless
> transaction at the automatic retail machine.

Dkt. 1-1 at claim 1 (identifying letters added).  Independent claims 14 and 21 recite identical

subject matter, with independent claim 14 reciting a generic "system" that performs the claimed

functions and claim 21 reciting computer instructions for performing those functions.

It is undeniable that the claims of the '833 Patent are directed to the use of conventional

wireless and mobile-device technology to conduct a financial transaction.  This fact creates a strong

presumption of ineligibility, as courts have repeatedly recognized that claims directed to financial

transactions are abstract.  *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.,* 876 F.3d 1372,

1374, 1379 (Fed. Cir. 2017) (finding the claims directed to ineligible subject matter, awarding

attorneys' fees to the defendant and noting "the '582 patent's claims are directed to an 'economic

---

arrangement' implemented using 'generic computer technology.' These issues were significant, if not determinative, of the Court's holding in *Alice*."). Indeed, the plaintiff's assertion of financial transaction claims weighed heavily in the *Inventor Holdings* decision to award sanctions. *Id.*

The specification of the '833 Patent makes clear that the abstract communications concepts disclosed therein are not tied to a novel technological environment. *See e.g.* Dkt. 1-1 at 1:57-59, 13:4-6, 17:25-35. Rather, the disclosed communications protocols cover virtually any communication format, computer hardware, mechanism of communication, and wireless transmission protocol. *See* Dkt. 1-1 at 17:25-35. The following element-by-element review of the claims, using general terms for purposes of explanation, further demonstrates the abstract nature of the claims:

- Step (a) recites locating or identifying a merchant that is currently available to perform a financial transaction. This is a task that can be done with the human mind.

- Step (b) recites determining that an authorization for a financial transaction is necessary before a purchase is made. This is a step performed whenever a customer asks a store to check her or his on-site credit limit, whenever a bank is asked to check the amount of funds present in the customer's account, or even whenever a child asks a parent for permission to buy something.

- Steps (c) and (d) recite using a server for authorization to perform a purchase and subsequently receiving purchase authorization from the server. These are fundamental exchanges required to perform the abstract financial task of obtaining approval for payment from a third party and are no different than a customer calling a bank to check on an account balance to make sure that sufficient funds are available for the purchase.

- Step (e) recites finding a "trigger condition" necessary to complete the purchase. According to the '833 Patent, the trigger condition is literally any condition that indicates that a customer wants to make a purchase. This is equivalent to a customer picking a drink off a menu or telling a salesperson or clerk that she wants to buy something.

- Step (f) recites the act of actually performing the financial transaction.

The claims of the '833 Patent are unpatentable because they recite the basic, abstract steps of entering a store, the store checking the customer's available credit (or calling a bank to do so), and, when the customer decides on the item, completing the purchase.

The claims of the '833 Patent do not recite any specialized technology.  As set forth in Section II.A *supra,* the automated retail machine, according to PayRange's contentions, may cover anything that provides services or goods for money (*e.g.,* vending machines, photo booths, *etc.*). Dkt. 1-1 at 13:4-6.  The mobile phone identifies an available retail machine and then communicates with the automated retail machine and a server using unspecified radio technology.  Dkt. 1-1 at 13:40-55, 17:25-35.  The server is any server that performs payment authorization and processing Dkt. 1-1 at 13:63-14:7.  The "trigger" for executing the purchase is not restricted to any technical feature.  Dkt. 1-1 at 20:58-21:50.

Courts routinely find that claims lack an inventive concept when, as here, the claims "require only off-the-shelf, conventional computer technology" or "conventional components and functions generic to electronic mobile devices."  *Clarilogic, Inc. v. Formfree Holdings Corp.*, 681 Fed. Appx. 950, 954 (Fed. Cir. 2017); *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1331 (Fed. Cir. 2017) (no "inventive solution" when claims are "implemented using the conventional components and functions generic to electronic mobile devices."); *Maxon, LLC v. Funai Corporation, Inc.*, 726 Fed. Appx. 797, 800 (Fed. Cir. 2018) (claims fail to "transform the claimed abstract idea into eligible subject matter" when they "merely recite generic computer elements for their basic functions"); *Elect. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-56 (Fed. Cir. 2016) (no inventive concept when claims require only "off-the-shelf conventional computer . . . technology"); *In re TLI Communs*, 823 F.3d at 613 (citations omitted) ("It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea.

Rather, the components must involve more than performance of 'well-understood, routine, conventional activit[ies] previously known to the industry'").

The Patent Trial and Appeal Board (the "Board") holds specialized expertise in the interpretation of patent law, handles all U.S. Patent and Trademark Office post-grant proceedings such as *Inter Partes* Reviews, and is considered an authority on the patentability of claims. *See* https://www.federalregister.gov/documents/2020/04/20/2020-08344/patent-trial-and-appeal-board-ptab-appeals. The Board has repeatedly held that claims directed to authorizing and executing financial transactions using mobile devices, such as the claims of the '833 Patent, do not recite patentable subject matter.

For example, in *Ex Parte Rajen S. Prabhu And David Chan*, 2018 WL 2131670 (2018) (Patent Tr. & App. Bd., April 27, 2018) the Board confirmed the unpatentability of claims directed to, among other concepts:

> [b] **determining**, by the processing system, that the mobile card has been presented as payment in a point-of-sale (POS) transaction, wherein said determining comprises using a POS device to retrieve the card information from the mobile card and receiving the card information and a transaction amount sent from the POS device;

> [c] **determining**, by the processing system, that a mobile phone is associated with the mobile card;

> [d] **sending** a transaction request to the mobile phone;

> [e] **receiving** a transaction authorization from the mobile phone;

> [f] **authorizing** the POS transaction; and

> [g] **causing the transaction amount to be paid** using a mobile wallet account associated with the mobile phone and the mobile card.

*Ex Parte Prabhu* at *1 (emphasis added). The claims in *Ex Parte Prabhu*, like the current claims, involved seeking authorization wirelessly for a purchase and then executing that purchase wirelessly. The applicants argued that the analytical steps of determining the need for a transaction

and executing that transaction rendered the claimed subject matter patent eligible. *Id.* at *4. The applicants further argued that the mobile and bank card technology recited in the claims rendered the subject matter patent eligible. *Id.* The Board rejected these arguments, noting that such steps "amount to nothing more than mere instructions to implement the abstract idea on a computer--none of which add an inventive concept because they merely require the application of conventional, well-known analytical steps." *Id.* The Board went on to reject the applicants' claim that the straightforward use of wireless and mobile technology rendered the claims eligible. *Id.* at *4-7.

In another instructive decision, the claims of the patent at issue recited a mobile device receiving "a first transaction authorization request message" from a card reader and sending the "authorization request" to a "payment authorization entity." *Ex Parte Oliver S. C. Quigley, Nathan McCauley, And Bob Lee* 2019 WL 366814 (Patent Tr. & App. Bd. January 15, 2019) at *1. The applicants argued that the claimed process improved power consumption and that the recited mobile technology rendered the claims non-abstract. *Id.* at *4. In rejecting the claims, the Board noted that:

> [m]oreover, Appellants do not argue that they invented a payment card, card reader, or mobile device. Nor do we see how the recitation of a payment card, card reader, and mobile device, even in conjunction with the recited functions, 'ensure[s] 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].' In short, claim 1 uses generic computer and peripheral hardware, i.e., payment card, card reader, and mobile device, as a tool to perform the abstract idea."

*Id.* (internal citations omitted). Just like the claims at issue in this Board decision, the '833 inventors did not invent any technology whatsoever. Each of the '833 Patent's inventors applied existing technology to an abstract financial task, and the claims of the '833 Patent are therefore not entitled to patent protection.

**B.    The Claims of The Asserted Patent Do Not Add An Inventive Concept to The Abstract Idea.**

The limitations recited in the '833 Patent's claims do not add meaningful limitations that confine the abstract idea so that its use by others is not preempted.  The limitations do not include "other elements or a combination of elements, sometimes referred to as the 'inventive concept,'" sufficient to demonstrate that the inventor does not seek to patent the underlying concept. *Mayo*, 132 S. Ct. at 1294.  "Post-solution activity that is purely conventional or obvious cannot transform an unpatentable principle into a patentable process." *Id*. at 1299.

The claims of the '833 Patent are directed to a purchase transaction between a customer and a merchant.  In order to be patentable, the '833 Patent's claims must add "significantly more" and cannot merely add "conventional or obvious" features. *Id*. at 1294, 1299.  The only features added in the claims of the '833 Patent beyond the purchase transaction concept are "an automatic retail machine," "a mobile device,"  "a radio transceiver,"  a "server," and " a mobile payment application," all of which features were well known and widely used long before the priority date of the '833 Patent as indicated by the '833 Patent's citations to well-known technologies for implementation. *See* Section II.A., *supra*; Dkt. 1-1 at 13:4-6, 13:40-55, 17:25-35, 13:63-14:7, 20:58-21:50.  Further, the '833 Patent repeatedly makes explicit that these component features are merely conventional components used in a conventional manner. *See* Section II.A., *supra*.

As the Supreme Court held in *Mayo*, "simply appending conventional steps, specified at a high level of generality, to ... abstract ideas cannot make those ... ideas patentable." *Mayo*, 132 S. Ct. at 1300.  This is precisely the makeup of the claims of the '833 Patent:  a conventional wireless mobile device with display capabilities appended to the claims as a medium for carrying out the abstract idea of requesting authorization for a purchase and then making the purchase.  Therefore, the claims asserted by Plaintiff do not reach or pass the threshold for patent eligibility. *Id.*

Tying the otherwise abstract claims of the '833 Patent to the physical world through inclusion of features like a "server" a "radio transceiver" or a "mobile device" does not make the claims patent-eligible. *Fort Props, Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1322 (Fed. Cir. 2012) (an "abstract concept cannot be transformed into patentable subject matter merely because of connections to the physical world"). The claims of the '833 Patent do not recite any novel technology or have meaningful technical limitations. The '833 Patent's claims only recite fundamental purchase communications between a mobile device, a server, and an automatic retail machine.

Courts routinely find no inventive concept in a patent when, as here, "claims are implemented using generic mobile device technology that existed well before the priority date." *Inventor Holdings, LLC v. Gameloft, Inc.*, 135 F. Supp. 3d 239, 253 (D. Del. 2015); *Affinity Labs*, 838 F.3d at 1262 ("use of generic features of cellular telephones" adds no inventive concept); *Credit Acceptance Corp. v. Westlake Services*, 859 F.3d 1044, 1056 (Fed. Cir. 2017) ("The use and arrangement of conventional and generic computer components recited in the claims—such as a database, user terminal, and server—do not transform the claim" into patent eligible subject matter). As the Board noted in *Square, Inc. et al. v. Unwired Planet, LLC et al.*, these conventional uses of known technology to transmit and display information do not render claims patent eligible:

> The displaying of point-of-sale locations to potential customers is well-known. Pet. 22 ("For example, shopping malls have had store directories for decades listing a menu of merchants and service providers based on proximity to the customer standing at the directory."); see Tr. 29:7–30:8. Similarly, in the "transmitting" step, the wireless device merely receives a correlated transaction amount transmitted by the merchant… ***Viewed as a whole, the recited methods of the challenged claims simply describe a transaction between a customer and a merchant, assisted or facilitated, but not fundamentally altered, by the use of a wireless device***.

*Square, Inc. et al. v. Unwired Planet, LLC et al.*, Case CBM2014-00156, slip op at 30-31 (PTAB December 22, 2015) (Paper 40) (emphasis added). Like the similar claims in *Square Inc.*, the

'833 Patent's claims claim the unpatentable, abstract acts of authorizing a transaction and conducting that transaction. *See also Ex Parte Latoya H. James* 2019 WL 2763407 at *4-6 (PTAB June 21, 2019) (holding that conventional uses of wireless and touchscreen interface technology used in a conventional manner do not create an inventive concept).

    **C.**    **The Dependent Claims Do Not Cure The Deficiencies of The Independent Claims.**

    Plaintiff does not claim that any of the dependent claims of the '833 Patent are infringed by KioSoft.  Dkt. 1.  Accordingly, Plaintiff cannot maintain Count I by pointing to subject matter in those dependent claims.  However, even if Plaintiff amended its Complaint to assert infringement of any of the dependent claims, the Complaint would still require dismissal.  The dependent claims recite generic and conventional computer functions that render them unpatentable.

    Claims 2, 6, 15, 19, 22, and 26 are directed to the use of wireless technology to determine whether a user has entered into an "authorization zone" or a "payment zone," which authorization and payment zones are within a certain distance of the automated retail machine and in which zones a user must be positioned in order to initiate authorization or payment, respectively.  *See* Dkt. 1-1 at Figs. 2-3; 4:34-45.  Claims 2, 6, 15, 19, 22, and 26 do not recite any limitations on how to determine which zone a user has entered.  Instead, claims 2, 6, 15, 19, 22, and 26 merely recite the act of determining if a user is "close enough," a task that could be performed with human eyes and mind.  Particularly, claims 2, 15, and 22 recite verifying that a user meets the "authorization zone" threshold, which threshold simply means whether the user is close enough to the automatic retail machine to have a payment transaction authorized and exchange basic identification information.  Claims 6, 19, and 26 determine whether a user is in the "payment zone" before performing a purchase.

---

Claims 3-5, 7-10, 16-18, 20, 23, 24, and 27 are directed to conditioning purchases on transfers of abstract identification information such as unspecified "mobile device information," or unspecified "user input," or performing general notification and communications functions.  None of these claims recite any non-abstract features that render the claims patent eligible.  Particularly, claims 3, 16, and 23 recite the generic transmission of abstract information about the mobile device that is used to confirm the mobile device is in the "authorization zone." Claims 4, 17, and 24 recite sending a notification that the "hands free" mode is available, *i.e.*, sending generic abstract information about the services available to the user.  Claims 5, 18, and 25 recite using generic identification information from the mobile device to determine if the user is authorized to make a purchase.  Claims 7, 20, and 27 identify the claimed "trigger condition" as an unspecified form of "user input" that is not limited to any technology or implementation.  Claims 7, 20, and 27 do not recite any meaningful technical limitations; rather, these claims tie the execution of the financial transaction to conventional and generic uses of conventional mobile technologies.

Claim 8 recites generically notifying the user that a connection has been formed.  This generic notification is not tied to any novel technical function.  Claim 9 recites the abstract task of notifying a user of an amount of funds available for a transaction.  Claim 10 recites the abstract tasks of transmitting an identifier for the mobile device, an amount of funds, and authorization information.  The Court should find that communicating and processing abstract information cannot render the '833 Patent's claims patent eligible.

Claim 11 recites that the communications are encrypted with an encryption key.  The mere act of encryption, absent additional limiting details, cannot render the claims patent

eligible. *Fidelity National Information Services, Inc. v. DataTreasury Corp*., CBM2014-0020, Op. at 15-17 (PTAB Apr. 29, 2015) (finding encryption claims patent ineligible).

Claim 12 recites the use of a "swipe" gesture to accept user input.  Swipe gestures were an entirely conventional form of user input.  Indeed, the '833 Patent implicitly acknowledges this by not providing any technological details about how to implement a swipe feature, knowing that such implementation details were widely known at the time of filing.  Dkt. 1-1 at 10:58-11:11.  Claim 13 recites that the swipe action is performed on an image of an automatic retail machine.  These conventional uses of conventional interface technology cannot render claims 12 and 13 patent eligible.

The dependent claims of the '833 Patent, like the independent claims, fail to transform the claimed abstract idea into a patentable invention.  Each dependent claim recites "functions that are not inventive but simply constitute particular choices from within the range of existing content or hardware." *Affinity Labs*, 838 F.3d at 1264.  While these limitations may narrow the independent claims, their "focus remains on the abstract idea" of conducting a financial transaction. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1291, n.1 (Fed. Cir. 2018).  Accordingly, even if Plaintiff had alleged infringement of any of the dependent claims, the dependent claims are also patent ineligible, thereby rendering futile any attempt to amend the Complaint to add additional claims.

V.    <u>**CONCLUSION**</u>

For at least the foregoing reasons, KioSoft respectfully requests that the Court find the claims of the '833 Patent invalid under 35 U.S.C. §101.  KioSoft also requests that the Court grant this Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6) and dismiss the present action with prejudice.

---

Dated: March 2, 2021               Respectfully submitted,

                                   /s/ John A. Camp
                                   John A. Camp
                                   Florida Bar Number 848115
                                   Ice Miller LLP
                                   7300 Biscayne Boulevard, Suite 200
                                   Miami, Florida 33138
                                   Phone:  305-341-9055
                                   John.Camp@icemiller.com

                                   *Counsel for Defendants KioSoft Technologies, LLC and TechTrex, Inc.*

## CERTIFICATE OF SERVICE

I, John Camp, do further certify that I have caused a true and correct copy of the Memorandum of Law in Support of Defendants KioSoft Technologies, LLC and TechTrex, Inc.'s Motion to Dismiss Plaintiff's Claim for Infringement of The '833 Patent (Count I) to be electronically mailed to all counsel of record included in the service list below on March 1, 2021 and that I have this day caused a true and correct copy of the same to be filed through the Court's ECF system, which system has sent notice to all counsel of record.

This, the 2nd day of March, 2021.


*/s/ John A. Camp*
John A. Camp

### SERVICE LIST

*PayRange Inc. v. KioSoft Technologies, LLC and TechTrex, Inc.*
Case No.:  1:20-cv-24342-RNS
United States District Court, Southern District of Florida

Joseph R. Englander
FOWLER WHITE BURNETT
1395 Brickell Avenue, 14th Floor
Miami, Florida 33131
Telephone: (305) 789-9259
Facsimile: (305) 728-7559
Email:  jenglander@fowler-white.com

*Counsel for Plaintiff PayRange Inc.*

**VIA ECF**

James C. Yoon (pending PHV)
Ryan R. Smith (pending PHV)
Jamie Y. Otto (pending PHV)
Neil N. Desai (pending PHV)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: jyoon@wsgr.com, rsmith@wsgr.com,
jotto@wsgr.com, ndesai@wsgr.com

**VIA ECF**