UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:20-cv-24342-RNS

| | |
|---|---|
| PAYRANGE, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| KIOSOFT TECHNOLOGIES, LLC and | ) |
| TECHTREX, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF PAYRANGE, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIM FOR INFRINGEMENT OF THE '833 PATENT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................4
II. LEGAL STANDARD..........................................................................................................5
III. ARGUMENT.......................................................................................................................7
    A. Defendants' Motion is Premature in View of Claim Construction Disputes...........7
    B. The '833 Patent is Directed to Eligible Subject Matter ............................................8
    C. The '833 Patent Claims Contain Multiple Inventive Concepts ..............................11
    D. Defendants Ignore the Specific Limitations of the Claims....................................13
    E. Defendants Fail to Address All Patent Claims ......................................................16
    F. Plaintiff Should Be Granted Leave to File an Amended Complaint .....................17
IV. Conclusion .........................................................................................................................17

# **TABLE OF AUTHORITIES**

**Page**

## CASES

*Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, (Fed. Cir. 2018) ................................................................................................................. 3, 4, 14

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016) ............................. 3

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ........................................... passim

*Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018) ......................................... 8

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266 (Fed. Cir. 2012) ................................................................................................................................ 4

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) ............................................................ 3, 8, 9

*DDR Holdings, LLC v. Hotels.com, LP*, 773 F.3d 1245 (Fed. Cir. 2014) ........................... 8, 11, 12

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) ............................................ 3, 7, 8

*Ex Parte Oliver S. C. Quigley, Nathan McCauley, And Bob Lee*, 2019 WL 366814 (Patent Tr. & App. Bd. January 15, 2019) ............................................................. 12

*Ex Parte Rajen S. Prabhu And David Chan*, 2018 WL 2131670 (2018) (Patent Tr. & App. Bd., April 27, 2018) ................................................................................... 12

*Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018) .............................................. 8

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc*, 876 F.3d 1372, (Fed. Cir. 2017) ............................................................................................................................. 12

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143 (Fed. Cir. 2019) ......................... 7

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012) ............................... 2, 3

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) .......................... 8

*MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373 (Fed. Cir. 2019) ...................................................... 4

*Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161 (Fed. Cir. 2019) ...................................................... 3

*Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138 (Fed. Cir. 2016) ................................... 3

*TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020) ..................................................... 3, 10

*Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F. 3d 1303 ..................................................... 7

*Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017) ..................................... 3, 7

**STATUTES**

35 U.S.C. § 101 ............................................................................................................ *passim*

## ARGUMENT

**I.   INTRODUCTION**

Defendants KioSoft Technologies LLC and TechTrex Inc. ("Defendants") fall far short of meeting their burden of establishing patent-ineligibility of the '833 Patent[1] by clear and convincing evidence. This is because Defendants' patent-ineligibility challenge rests on impermissibly broad and misleading characterizations of the '833 Patent. The claims are not directed to merely asking for permission before transacting. They instead aim to solve a technological problem; specifically, before the '833 Patent, cashless automatic retail transactions typically required persistent network connectivity at or near the point of sale. Claim 1 improves the functional capabilities of computer networks by enabling:  (1) Automated purchasing at a mobile device through preemptively obtained payment authorizations and (2) Asynchronous communication between the payment server and the automatic retail machine via the mobile device, thus avoiding the need for a persistent network. Defendants utterly fail to address these improvements, which altogether show that the invention concretely improves the functioning of computer networks—it is not an abstract idea. The claims are patent eligible at *Alice* step one.

Even if the Court were to reach *Alice* step two, the claims of the '833 Patent contain multiple inventive concepts, including identifying an automatic retail machine and a trigger condition to complete the transaction, and the "payment zone" and "authorization zone" of proximity to the automatic retail machine. Defendants ignore the factual allegations, accepted as true for purposes of a motion to dismiss, in the Complaint that demonstrate that the claims were not well-understood, routine, or conventional. At most, Defendants' motion highlights the parties' factual dispute. The Complaint sufficiently alleges infringement of a patent that is not invalid under § 101.

---

[1] "'833 Patent" refers to U.S. Patent No. 10,719,833, filed as D.I. 17-1.

Defendants' *Iqbal* challenge fails as well. The Complaint includes one count, for infringement of the '833 Patent. Paragraph 29 of the Complaint alleges that Defendants' products practice every limitation of claim 1 of the '833 Patent. Aside from the § 101 arguments addressed above, Defendants have not challenged the sufficiency of the allegation that their products infringe claim 1, which is sufficient to state a claim for patent infringement. And the relief Defendants have requested—for the Court to "dismiss the Complaint for failure to state a claim with respect to the unspecified claims of the '833 Patent"—confuses claims for relief with patent claims. PayRange need not now allege facts supporting infringement of every patent claim it will assert at trial in order to plausibly plead that Defendants have infringed the '833 Patent.

## II. LEGAL STANDARD

Under 35 U.S.C. § 101, any "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may be patented, but "laws of nature, natural phenomena, and abstract ideas" are not patent-eligible. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 82 (2012). The Supreme Court has articulated a two-part test to determine whether a claim covers patent-eligible subject matter or an unpatentable abstract idea:

> First, we determine whether the claims at issue are directed to one of those ***patent-ineligible concepts***. If so, we then ask, "[w]hat else is there in the claims before us?" To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an ***"'inventive concept'"***—i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (emphasis added) (internal citations omitted). The Supreme Court has cautioned that "we tread carefully in construing this exclusionary principle lest it swallow all of patent law" because "[a]t some level,

'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Id.* at 2354 (citing *Mayo*, 566 U.S. at 71).

At step one of the *Alice* analysis, a claim is not "directed to" an abstract idea, and thus is patent-eligible subject matter, if it "focus[es] on specific asserted improvements in computer capabilities" rather than "on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020). The inquiry assesses "what the patent asserts to be the 'focus of the claimed advance over the prior art.'" *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019) (quoting *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)). That inquiry "'must focus on the language of the [a]sserted [c]laims themselves,'" *TecSec*, 978 F.3d at 1292 (quoting *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016)), because "characterizing the claims at 'a high level of abstraction' that is 'untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.'" *Id.* at 1293 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016)).

At step two of *Alice*, "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

When reviewing a motion to dismiss under Rule 12(b)(6), all factual inferences must be drawn in favor of the non-moving party. *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1261 (Fed. Cir. 2017). In addition, even if the motion is granted, leave to amend should be freely given. For example, in *Aatrix Software, Inc. v. Green Shades Software, Inc.*, the Federal Circuit found error where a district court "denied leave to amend without claim construction and in the face of factual allegations, spelled out in the proposed second amended complaint, that, if accepted

as true, establish that the claimed combination contains inventive components . . . ." 882 F.3d 1121, 1125 (Fed. Cir. 2018).

**III.   ARGUMENT**

      **A.   Defendants' Motion is Premature in View of Claim Construction Disputes**

The Federal Circuit has noted that "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012). Indeed, "if the parties raise a claim construction dispute at the Rule 12(c) stage, the district court must either adopt the non-moving party's constructions or resolve the dispute to whatever extent is needed to conduct the § 101 analysis." *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019).

The parties will likely identify disputed claim terms from the '833 Patent. For example, the parties will likely dispute the meaning of the term "automatic retail machine": Defendants argue that the specification equates this term with "vending machine" and assert that vending machines dispense goods, not services (Mot. at 4), while the Complaint implies that laundry washers and dryers, which can be activated by the "CSCPayMobile app powered by Defendants," can be "automatic retail machines," especially since the claim language contemplates provision of services. Moreover, PayRange disputes Defendants' construction of "vending machine," which is a claim term in another patent in the same family as the '833 Patent. *See* Amended Opening Claim Construction Brief, *PayRange, Inc. v. KioSoft Techs., LLC*, No. 1:20-cv-20970, D.I. 147 at 3 (S.D. Fla. Mar. 5, 2021) (the "First Action"). The parties' other claim construction disputes in the First Action similarly suggest that other terms will be disputed here, including "identifying the automatic retail machine" and likely additional terms.

These and other claim construction disputes are relevant to the § 101 issue because they may govern which technological solutions to the technical problems disclosed by the patent are within the scope of the claims. For example, the patent recites "identifying the automatic retail machine based at least in part on a transmission received from an electronic payment device of the automatic retail machine" and "in response to identifying the automatic retail machine, obtaining, from the electronic payment device, a request . . . ." '833 Patent at claim 1. If the parties dispute whether "receiving" and "obtaining" require direct rather than indirect communication, the resolution of that dispute could determine the scope of the claims' coverage of the solution to the problem of cashless transactions in a locale where no persistent network connections are possible.

Because there will likely be claim construction disputes with respect to the '833 Patent and because *Alice* step two is a question of fact, addressing patent eligibility at this stage would be premature. Defendants' Motion should be denied.[2]

### B. The '833 Patent is Directed to Eligible Subject Matter

If the Court can resolve Defendants' eligibility challenge at the pleading stage, the Motion should still be denied. Under step one of *Alice*, the claims are directed to an improvement in the functioning of computer networks, which constitutes a patent-eligible technological application, not an abstract idea. Defendants' contrary arguments are based on oversimplifications: they ignore specific claim language that shows that the claims are directed to solving this technological problem. The patent does not simply claim the abstract idea of "authorizing and then performing a financial transaction." Mot. at 1.

Prior to the invention claimed in the '833 Patent, cashless payments to automatic retail machines were limited by the requirement of a persistent network connection. Machines that

---

[2] Defendants' motion is also premature in that Defendants have only moved to dismiss one of the three asserted patents across the two cases. Regardless of the outcome of the Motion, the parties will move forward with fact and expert discovery, informing the present dispute.

accepted cashless payments (e.g., credit card readers) needed built-in cellular modems or other means to form a persistent network connection in order to authenticate cashless payments on demand. This requirement limited the reliability and versatility of cashless payment systems for automatic retail machines. Without a network connection that could validate the payer information at the point of sale, cashless transactions would not be available. This problem would prevent, e.g., vending machines in locations without cellular service from being able to accept cashless payments. '833 Patent at 10:20-38.

The '833 Patent solves these problems, improving on prior solutions that allowed automatic retail machines to accept cashless payments without built-in persistent network connections, and solving the more fundamental problem of cashless payments to automatic retail machines without any persistent network connection available in the vicinity of the machine. *See id.* at 9:44-45; 10:38-57. Prior art solutions treated a mobile phone's cellular network access as a communications bridge between the automatic retail machine and a payment server, but they uniformly required 1) substantial user interaction with the mobile phone to select a particular good or service and 2) a persistent connection from the mobile phone to the server at or near the point of sale. *Id.* at 10:38-46. The '833 Patent improves on this prior art by, among other things, enabling:

1. Automated purchasing through preemptively obtained payment authorizations, rather than waiting to obtain authorization <u>after</u> the user has requested authorization.

2. Asynchronous communication between the payment server and the automatic retail machine via the mobile device. *Id.* at 10:46-54. This asynchronous communication is achieved by, e.g., pre-authorizing a set amount of funds to be used with a specified automatic retail machine while the mobile device is connected to the Internet, and later connecting the device to the machine to make purchases from the machine, up to the authorized amount. Automatic retail machines "located in a remote location where no

signal is available, therefore, can accept cashless payments." *Id.* at 10:55-57. In other words, the inventor defied conventional logic—which required a direct Internet connection between the server and automatic retail machine—by offering a solution which leveraged the mobile phone's Internet connection.

The Federal Circuit has held that patents directed to analogous technological improvements pass *Alice* step one. For example, in *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, the claims involved a "communications station" "for broadcasting a series of inquiry messages, each in the form of a plurality of predetermined data fields arranged according to a first communications protocol, and for adding to each inquiry message prior to transmission an additional data field for polling at least one secondary station." 957 F.3d 1303, 1305-06 (Fed. Cir. 2020). The Federal Circuit held that this claim (as well as the other claims of the patent) "are directed to a patent-eligible improvement to computer functionality, namely the reduction of latency experienced by parked secondary stations in communication systems." *Id.* at 1307. The claims of the '833 Patent similarly improve how devices communicate within a system by preemptively seeking payment authorization and enabling asynchronous communications to obivate the the need for an automatic retail machine with its own Internet connection.

The Federal Circuit reached similar holdings in other analogous cases. *See Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1144 (Fed. Cir. 2019) (claims were directed to a device that "enables a data transmission error detection system to detect a specific type of error that prior art systems could not"); *Visual Memory*, 867 F.3d at 1259-60 (enhanced computer memory system that "obviate[s] the need to design a separate memory system for each type of processor, which proved to be costly and inefficient, and, at the same time, avoid[ed] the performance problems of prior art memory systems"); *Enfish*, 822 F.3d at 1335-39 (self-referential table recited in the claims did not simply encompass any form of storing tabular data, but rather

was directed to a specific type of data structure designed to improve the way that a computer stores and retrieves data in memory); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305-06 (Fed. Cir. 2018) (claims "employ[] a new kind of file that enables a computer security system to do things it could not do before" and there was "no contention that the only thing disclosed is the result and not an inventive arrangement for accomplishing the result"); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314-15 (Fed. Cir. 2016) (improvement in computer animation using specific rules); *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018) (claims addressed a technical problem related to computers and disclosed improvements "done by a specific technique that departs from earlier approaches . . . ."). Similarly, the claims here "do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC v. Hotels.com, LP*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).

        C.    **The '833 Patent Claims Contain Multiple Inventive Concepts**

Even if Claim 1 is directed to an abstract idea, multiple limitations included in the claims amount to more than "well-understood, routine, and conventional activities" in the field, such that the claims are patent eligible under *Alice* step two. *Berkheimer*, 881 F.3d at 1368. Whether an activity is "well-understood, routine, and conventional" is a question of fact, and if the well-pleaded factual allegations of a complaint support that a claim limitation was not "well-understood, routine, and conventional," the complaint should not be dismissed under § 101. *Id.* at 1369. The standard for this determination "goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Id.*

Claim 1 requires "obtaining, from the electronic payment device, a request, via the communications unit of the mobile device, to preemptively obtain authorization to make funds available for a cashless transaction with the automatic retail machine" and "sending, to a server, the request via the communications unit of the mobile device . . . ." '833 Patent at claim 1. The improved electronic request thus travels from the payment device of the automatic retail machine, to the mobile device, and from there to the server. This path of travel for a request to "preemptively obtain authorization" was recognized as novel and non-obvious by the examiner of the '833 Patent, who recognized that the prior art contained direct communication from payment accepting units to mobile payment servers in the preemptive authorization context, but "d[id] not teach the limitation of sending to a server the request via the communications unit of the mobile device." Ex. 1 at 8. This was to be expected: the mobile device plays a crucial role in solving the problem of cashless transactions over a non-persistent network. The examiner also noted that it was "unclear" whether the relevant prior art taught the origination of the request in the the electronic payment device. *Id.* If a practice is not clearly taught by the prior art, it is a far cry from "well-understood, routine, and conventional." *Berkheimer*, 881 F.3d at 1368.

The other claims of the '833 Patent contain several other inventive concepts, contrary to Defendants' arguments. The "payment zone" and "authorization zone" limitations of claims 2, 6, 15, 19, 22, and 26, and their dependents, solve the technical problem of which device is charged for a purchase when multiple devices are in range of the automatic retail machine. The encryption limitation of claim 11 constitutes an "additional limiting detail" (Mot. at 19) that enhances the ability of claim 1 to solve the problem of cashless payments over a non-persistent network by adding security to the authorization grants, making them harder to fake. Defendants do not address the additional limitations in independent claims 14 and 21 or contend that the use of two distinct communication capacities, relying on distinct transceivers, is either an abstract idea or routine

post-solution activity. In fact, the use of separate short-range and long-range communication capacities is important in many implementations of the '833 Patent's solution to the problem of cashless payments over non-persistent networks.

### D. Defendants Ignore the Specific Limitations of the Claims

Defendants' § 101 argument relies on cherry-picked portions of the specification (Mot. at 2-6) and is "untethered from the language of the claims." *TecSec*, 978 F.3d at 1293. One searches in vain for any acknowledgment by Defendants (outside of one direct but incomplete quote of claim 1, Mot. at 11) that the claims require a cashless transaction, an electronic payment device, identification of an automatic retail machine based on a transmission received from an electronic payment device, or obtaining the request for authorization from the electronic payment device. These omissions matter: the technological solution claimed in the '833 Patent solves a problem that uniquely arises in the field of cashless transactions. Defendants' characterization of the claims improperly abstracts away the entire technical field giving rise to the problem that the patent solves.

This deficiency in Defendants' argument is clear upon comparing the actual claim elements with Defendants' characterizations of them. Defendants' numbered list of claim elements omits the limitation that the steps occur "prior to user selection of any items or services provided by an automatic retail machine," and Defendants include no argument that this limitation is reducible to abstract ideas and generic computer implementations. Mot. at 11; '833 Patent at claim 1. This limitation is relevant to the § 101 analysis, since it claims a feature that constitutes a technological improvement over prior-art systems. Prior systems which required user selection of "items or services provided by an automatic retail machine" prior to completion of at least some of the transaction-authorization steps were unwieldy and required substantial user interaction with the mobile device at or near the point of sale. '833 Patent at 10:38-46. The ability to electronically

-13-

authorize the funds for a cashless transaction prior to selecting the item or service to be purchased helped to solve the problem of requiring a persistent network connection at the point of sale. *Id.* at 10:47-56.

The claim elements that Defendants omit in characterizing each limitation similarly show that the claim is directed to a technological improvement rather than an abstract idea. Defendants attempt to reduce "identifying the automatic retail machine based at least in part on a transmission received from an electronic payment device" to "locating or identifying a merchant that is currently available to perform a financial transaction" (Mot. at 11-12), but the fact that the claim is limited to "automatic retail machine[s]"—which are more likely than other payment accepting units to be located in areas with poor network connectivity, and thus have a pressing need for the solution described in the patent—containing "electronic payment device[s]" directs the claim to the technical field of cashless payments. Defendants similarly ignore the term "cashless" in characterizing the next limitations as "determining that an authorization for a financial transaction is necessary before a purchase is made," and "using a server for authorization to perform a purchase and subsequently receiving purchase authorization," and the Motion thus fails to grapple with the network architecture shortcomings that the invention of the '833 Patent addressed. *Id.* at 12; '833 Patent at 10:47-56. Finally, Defendants again ignore the limitation requiring a cashless transaction and an automatic retail machine with an electronic payment device, in conjunction with the use of an authorization grant that allows completion of the transaction at the machine, when describing the final two claim elements. The final step does not "recite the act of actually performing the transaction"—it communicates an authorization to perform a cashless transaction to an automatic retail machine in such a way that a non-persistent network can be used.

The Federal Circuit's analysis in *DDR Holdings* is on point. There, the claims were directed to "systems and methods of generating a composite web page that combines certain visual

-14-

elements of a 'host' website with content of a third-party merchant." *DDR Holdings*, 773 F.3d at 1248. While the claims were arguably analogous to the "well-known" "concept" of a "store within a store" in the "brick and mortar" context, the claims solved the additional problem, unique to commerce conducted via the hyperlink-based network architecture of the Internet, of "retaining control over the attention of the customer" who seeks to browse the store-within-a-store. *Id.* Here, some of the aspects of the claims are arguably analogous to manual pre-authorization of a transaction, e.g., a child asking a parent for cash to make a purchase. But the problem of keeping track of transactions such that double-spending is prevented "does not arise in the . . . context" of cash transactions; cash is a bearer instrument that can be held physically to track balances. *Id.* And every example of pre-authorization of cashless transactions that Defendants cite (Mot. at 12) involves a direct connection between the authorizing entity and the merchant at the point of sale. Moreover, the patent "specif[ies] how interactions with the Internet are manipulated to yield a desired result," i.e., that the mobile device can receive the authorization grant and then hold it for use while not connected to the persistent network, such that the practice of the claims "is not merely the routine or conventional use of the Internet." *DDR Holdings*, 773 F.3d at 1258-59.

The claims here are also distinguishable from the ones in Defendants' cited cases. In *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, the Court cited with approval the District Court's determination that the patent did not claim "any specific, inventive ways of storing codes in databases or electronically applying them," whereas here, the claims cover an inventive way to use non-persistent networks to "apply" a "code" that authorizes a cashless transaction. 876 F.3d 1372, 1376 (Fed. Cir. 2017). *Ex Parte Rajen S. Prabhu And David Chan*, 2018 WL 2131670 (2018) (Patent Tr. & App. Bd., April 27, 2018), and *Ex Parte Oliver S. C. Quigley, Nathan McCauley, And Bob Lee*, 2019 WL 366814 (Patent Tr. & App. Bd. January 15, 2019), are also distinguishable in that the network architecture the patents there employed for processing

payments was wholly conventional. Furthermore, the PTAB's decisions regarding patent eligibility are not binding precedent for this Court. And to the extent this Court should defer to the Patent Office's expertise, it should follow the lead of the patent examiner: after lodging an initial *Alice* rejection against claims to a mobile-device-to-machine payment system in the same patent family as the '833 Patent, the examiner allowed the claims once they were amended to recite concrete, technical limitations akin to the limitations present in claim 1 of the '833 Patent. Ex. 2 at 3 (rejecting claims under § 101), 5 (adding limitations), 10 (rejection overcome).

Thus, at minimum, the Court should deny Defendants' motion as it turns on factual disputes about what a person of ordinary skill in the art would consider to be well-understood, routine or conventional at the time of the invention.

### E. Defendants Fail to Address All Patent Claims

Defendants improperly seek to dismiss with prejudice the count for infringement of the '833 Patent in its entirety, but its Motion only addresses a small subset of claims. For example, "Defendants have been and are now infringing ***at least*** claim 1 of the '833 Patent . . ." Complaint ¶ 30 (emphasis added). Defendants have cited no authority for the proposition that PayRange must identify each asserted claim in the Complaint. Nor have Defendants sought a more definite statement in response to the Complaint. Defendants' failing is not merely procedural in nature. For example, claim 14 includes material distinctions from claim 1. It requires, for instance, a "first transceiver corresponding to a short-range communications mode" and "a second transceiver, distinct from the first transceiver, corresponding to a long-range communication mode distinct from the short-range communication mode." '833 Patent at 34:44-48. Independent claim 21 includes similar limitations. *Id.* at at 35:64-36:1. The use of multiple distinct transceivers used for distinct communication modes is certainly not an abstract idea. It is a concrete application of communications hardware to specific inventive ends, and the inclusion of similar limitations in the

prosecution of a family member of the '833 Patent allowed the patent to overcome an *Alice* rejection. Defendants failed to address all claims of the '833 Patent, so their Motion should be denied or limited to the specific claims addressed in the Motion.

### F.    Plaintiff Should Be Granted Leave to File an Amended Complaint

Defendants' Motion should be denied. Still, in the event that the Motion is granted, PayRange should be given leave to amend to allege with particularity the various inventive concepts contained in the claims. *See Aatrix Software*, 882 F.3d at 1126.

## IV.    Conclusion

Defendants' Motion is premised on mischaracterizations of the '833 Patent and a refusal to engage with the details of the technical improvement that the patent accomplished. The claims as written are patent-eligible under § 101. The Motion should be denied.

| | |
|---|---|
| Dated: March 16, 2021 | */s/ Joseph R. Englander*<br>Joseph R. Englander<br>FOWLER WHITE BURNETT<br>1395 Brickell Avenue, 14th Floor<br>Miami, Florida 33131<br>Telephone: (305) 789-9259<br>Facsimile: (305) 728-7559<br>Email: jenglander@fowler-white.com<br><br>James C. Yoon (PHV)<br>Ryan R. Smith (PHV)<br>Neil Desai (PHV)<br>Jamie Y. Otto (PHV)<br>George Edward Powell III (PHV)<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br>Telephone: (650) 493-9300<br>Facsimile: (650) 565-5100<br>Email: jyoon@wsgr.com,<br>rsmith@wsgr.com,<br>ndesai@wsgr.com<br>jotto@wsgr.com,<br>epowell@wsgr.com<br><br>*Counsel for Plaintiff PayRange Inc.* |

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing document has been served on March 16th, 2021, via the Court's CM/ECF system on all counsel of record who have consented to electronic service.

*/s/ Joseph R. Englander*
Joseph R. Englander