UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:20-cv-24342-RNS

| | |
|---|---|
| PAYRANGE, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| KIOSOFT TECHNOLOGIES, LLC and | ) |
| TECHTREX, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY IN SUPPORT OF
DEFENDANTS KIOSOFT TECHNOLOGIES, LLC'S AND
TECHTREX, INC.'S MOTION TO DISMISS PLAINTIFF'S
<u>CLAIM FOR INFRINGEMENT OF THE '833 PATENT (COUNT I)</u>**

**Table of Contents**

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENTS .......................................................................................................................1

    A. KioSoft Is Entitled to Dismissal Because Plaintiff Has Identified No Claim Construction Positions that Preclude Resolution on Section 101 Grounds ..............................................1
    B. Plaintiff's Patent Claims are Directed to an Abstract Idea. ................................................2

        1. *The Features Identified by Plaintiff Do Not Render Its Patent Claims Non-Abstract.* 2
        2. *The Abstract Idea Analysis Must Evaluate the "Focus" of the Claims*    4
        3. *The '833 Patent's Claims are Nothing Like the Genuine Technical Improvements Found Eligible*    6

    C. The '833 Patent Contains No Inventive Concept Sufficient to Transform the Claims .......7
    D. The Unasserted Claims Cannot Salvage Plaintiff's Complaint .........................................9
    E. Any Amendment by Plaintiff would be Futile .................................................................10

III. CONCLUSION ...................................................................................................................10

# **TABLE OF AUTHORITIES**

**CASES**

*Alice Corp. Pty. Ltd. v. CLS Bank In'l*, 573 U.S. 208, 134 S. Ct. at 2347, 189 L.3d. 2d 296 (2014)...5

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266 (Fed.Cir.2012) ......8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................10

*Bridge & Post, Inc. v. Verizon Communs., Inc.*, 778 Fed. App'x. 882 (Fed. Cir. 2019).......................9

*BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018) ...................................................4

*buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) ............................................................8

*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 17-cv-5169-GW(FFMX), 2018 WL 2558385 (C.D. Cal. Feb. 12, 2018) ...............................................................................................................1

*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) .........................................3, 5

*Checkfree Corp. v. Metavante Corp.*, No. 3:12–cv-15-J-34JB, 2014 WL 466023, (M.D. Fla. Jan. 17, 2014) ...........................................................................................................................................5

*Cogent Med., Inc. v. Elsevier Inc.*, 70 F. Supp. 3d 1058 (N.D. Cal. Sept. 30, 2014)..................7, 8, 9

*CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011).....................................6

*DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245 (Fed. Cir. 2014) ..........................................6

*Enfish, LLC v. Microsoft Corp.,* 822 F.3d 1327 (Fed. Cir. 2016)..........................................................6

*Ex Parte Rajen S. Prabhu And David Chan*, No. APPEAL 2017-000585, 2018 WL 2131670 (Pat. Tr. & App. Bd., Apr. 27, 2018) ...................................................................................................5

*Fortinet, Inc. v. Sophos, Inc.,* No. 13-cv-05831, 2015 WL 6513655, (N.D. Cal. Oct. 28, 2015) .........5

*Glasswall Sols. Ltd. v. Clearswift Ltd.*, 754 F.App'x 996 (Fed. Cir. 2018).........................................3

*In re Morsa*, 809 Fed. App'x. 913, (Fed. Cir. 2020)............................................................................8

*Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335 (Fed. Cir. 2018...............................................4, 7

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372 (Fed. Cir. 2017) ................2, 3, 8

*Inventor Holdings, LLC v. Gameloft, Inc.*, 135 F. Supp. 3d, 239 (D. Del. 2015) ............................3, 8

*Mortg. Grader, Inc. v. First Choice Loan Servs.*, 811 F.3d 1314 (Fed. Cir. 2016)..............................6

*Move, Inc. v. Real Est. Alliance Ltd.*, 221 F. Supp. 3d 1149 (C.D. Cal. 2016) *aff'd in part,* 721 Fed. Appx. 950 (Fed. Cir. 2018)...........................................................................................................5

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008) ........................2

*OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015) ...........................................2, 8

*Square, Inc. et al. v. Unwired Planet, LLC et al.*, Case CBM2014-00156, slip op at 30-31 (Pat. Tr. App. Bd. Dec. 22, 2015) ...............................................................................................................8

*Thermolife Int'l, LLC v. Vitamin Shoppe, Inc.*, No. 0:16-cv-60693, 2016 WL 6678525 (S.D. Fla. June 8, 2016) .................................................................................................................... 10

*Two-Way Media Ltd. v. Comcast Cable Communs., LLC*, 874 F.3d 1329 (Fed. Cir. 2017) ................ 5

*Voip-Pal.Com, Inc. v. Apple Inc.* 375 F. Supp. 3d 1110 (N.D. Cal. Mar. 25, 2019) ............................ 7

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405 (D.N.J. 2015) ..... 2

**OTHER AUTHORITIES**

35 U.S.C. § 101 ........................................................................................................................ 1, 9

# MEMORANDUM OF LAW

## I.   INTRODUCTION

PayRange Inc.'s ("Plaintiff") U.S. Patent No. 10,719,833 (the "'833 Patent") is directed to unpatentable subject matter under 35 U.S.C. § 101. Plaintiff's arguments rely on characterizing the routine implementation of financial transactions as "technological" and attempt to compare Plaintiff's routine implementation of a financial process to the genuine technological improvements that have been found to be directed to patentable subject matter in other cases. Plaintiff's arguments and its Complaint (Dkt. 1) should be rejected for at least the reasons set forth in KioSoft Technologies, LLC's and TechTrex, Inc.'s (collectively "KioSoft") opening memorandum (Dkt. 19) and the instant reply.

## II.   ARGUMENTS

### A.   **KioSoft Is Entitled to Dismissal Because Plaintiff Has Identified No Claim Construction Positions that Preclude Resolution on Section 101 Grounds.**

Plaintiff asks this Court to kick the proverbial can down the road and delay a decision on KioSoft's motion because claim construction has not yet taken place. Dkt. 27 at 7-8. To support that argument, Plaintiff points to several terms that describe generic and conventional technology: *e.g.,* "automated retail machine," "identifying," and "receiving." However, Plaintiff offers no constructions for these terms, let alone any explanation of how the validity analysis rests on these terms. Plaintiff therefore provides no reason why claim construction is necessary other than delay. For example, Plaintiff refers to "direct" vs. "indirect" communications, but Plaintiff does not and cannot plead that simply passing communications from one party to another was not known or renders its Patent claims non-abstract. Dkt. 27 at 8.

Having failed to identify any reason why claim construction would be determinative, Plaintiff cannot simply demand that adjudication of its invalid patent be delayed until claim construction. *See Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 17-cv-5169-GW(FFMX), 2018 WL 2558385, at *8 (C.D. Cal. Feb. 12, 2018) (claims require construction before ruling on a § 101 motion "only where claim construction disputes are relevant to the § 101 question."). The '833 Patent claims are directed to an abstract idea regardless of whether the Court construes the claim terms broadly or narrowly. *See, e.g., Wireless Media Innovations, LLC v. Maher Terminals, LLC*,

100 F. Supp. 3d 405, 410 (D.N.J. 2015 (no need to construe claims when "the computerized process disclosed in the [] patent is invalid under § 101, under any reasonable construction"). Because Plaintiff has failed to identify a dispute on claim construction that would affect the validity analysis, this Court is under no obligation to construe the claims. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (finding no obligation to construe claims absent dispute demonstrating relevance).

> B. **Plaintiff's Patent Claims are Directed to an Abstract Idea.**
>
>> 1. *The Features Identified by Plaintiff Do Not Render Its Patent Claims Non-Abstract.*

In disputing that the '833 Patent's claims are directed an abstract idea, Plaintiff does not address the abstract concept. Instead, Plaintiff mischaracterizes the law and the facts in an attempt to inaccurately characterize its financial disclosure as a technical one. Plaintiff asserts that its Patent claims are not abstract because the claims are purportedly directed to "automated purchasing through preemptively obtained payment authorizations" and "asynchronous communications between the payment server and automated retail machine via the mobile device, thus avoiding the need for a payment network." Dkt. 27 at 1. The use of technological language does not save the '833 Patent from the fact that that Patent discloses nothing more than utilizing computers and mobile devices in conventional ways to automate abstract financial tasks so that they are not performed by a human.

Automation of an abstract task such as seeking financial authorization has been repeatedly and emphatically rejected as a way to render claims non-abstract. Indeed, the automation of financial activities such as financial transaction authorizations is the prototypical patent ineligible concept. *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1374, 1379 (Fed. Cir. 2017) (finding claims related to the computerization and automation of financial activity invalid and awarding attorneys' fees because "the '582 patent's claims are directed to an 'economic arrangement' implemented using 'generic computer technology.'"); *see OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362-63 (Fed. Cir. 2015) (claims directed to computer automation of previously manual offer-based price optimization).

Plaintiff also asserts that the '833 Patent claims are not abstract because they are directed to providing wireless communication capabilities to a vending machine and performing tasks "asynchronously," meaning that the automated retail machine communicates with the mobile

device, which then communicates with the server.  Dkt. 27 at 9-10.  Yet other than repeatedly making this claim, Plaintiff offers no explanation concerning how the disclosed system performs this asynchronous communication and does not identify any such disclosure in the claims.  The claims recite the bare act of communicating from the automated retail machine to the mobile device and then from the mobile device to the server.  Dkt. 1-1 at claim 1.  The claim discloses no technological improvement for this communication.  *Id.*

Plaintiff does not and cannot assert that the claimed system makes any vending machine or mobile device better or that it recites a novel arrangement of communications.  Had the '833 Patent claimed a more efficient or better way to communicate wirelessly, then Plaintiff might have a plausible argument that the Patent's claims were eligible.  Plaintiff cannot overcome the simple fact that the claims recite obtaining payment authorization using conventional wireless communication means in their ordinary, conventional capacities to facilitate wireless communications.  Stripped of the context of performing an abstract financial task, the claims of the '833 Patent entail one device communicating with a second device, which second device communicates with a third device.  *See Glasswall Sols. Ltd. v. Clearswift Ltd.*, 754 Fed. Appx 996, 999 (Fed. Cir. 2018) (invalidating claim under § 101 when claim "does not allow the computer to do something it could not previously do.").

The district court's analysis in *Inventor Holdings* is instructive.  *Inventor Holdings, LLC v. Gameloft, Inc.*, 135 F. Supp. 3d, 239, 251 (D. Del. 2015).  There, like here, the plaintiff insisted that mobile communications allowed its patent to perform abstract tasks more efficiently.  *Id.*  The court rejected this analysis, noting:

> Plaintiff argues that the '198 patent "claims a specific solution to a specific problem associated with gaming on a mobile device, which itself is a recent advance. ... Plaintiff does not, however, assert that the claims of the '198 patent solve a problem specific to mobile devices.

*Id.* (internal citations omitted).  Like the claims in *Inventor Holdings,* the claims of the '833 Patent use prior art mobile communications to improve the performance of an abstract financial task.

The Federal Circuit's analysis in the *ChargePoint* case is also instructive.  *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768 (Fed. Cir. 2019).  Like the '833 Patent's claims, the claims asserted in the *ChargePoint* case purported to solve a problem of providing wireless access to a device that did not previously have wireless access.  *Id.*  The Federal Circuit roundly rejected these arguments, noting:

> The specification also makes clear—by what it states and what it does not—that the invention of the '715 patent is the idea of network-controlled charging. … The specification then goes on to describe a networked system in which, among other things, drivers can determine whether a charging station is available, drivers can pay to charge their vehicles, and utility companies can supply information to charging stations from a demand response system.  Notably, however, the specification never suggests that the charging station itself is improved from a technical perspective, or that it would operate differently than it otherwise could. Nor does the specification suggest that the invention involved overcoming some sort of technical difficulty in adding networking capability to the charging stations.

*Id.* The '833 Patent claims describe a fundamental economic practice for which the claimed wireless communications components are "used in [their] ordinary capacity" to enable a device that did not previously have wireless access to subsequently access the Internet. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018).

The '833 Patent's claims do not describe a method or system that overcomes some technical difficulty(facilitating cashless payment is not a technical problem), and the '833 Patent's specification admits as much by confirming that the claimed system and method can be used with virtually any known communications technology.  *See* Dkt. 19 at 5 citing Dkt 1-1 at 13:40-55 and 17:25-35.  Similar to the claims at issue in the *ChargePoint* case, the benefits of the '833 Patent flow not from an improvement to how the technology operates, but instead from performing an abstract payment authorization and purchase in combination with known and conventional wireless steps of transmitting from the automated retail machine to the mobile device and from the mobile device to the server.

When addressing patentees' arguments that claims are non-abstract because they disclose solutions for problems that employ computer networks, the Federal Circuit consistently distinguishes claims that "improve a computer as a tool" (not abstract) from claims that *use* computers as tools (abstract).  *See Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018.  Though Plaintiff's claimed method may improve on prior art payment methods (all patents claim to improve on what came before), it does not do so by improving any computer capabilities.  The '833 Patent's claims disclose only standard computer and wireless components used as tools to carry out conventional financial activities.

    2.    *The Abstract Idea Analysis Must Evaluate the "Focus" of the Claims.*

Plaintiff accuses KioSoft of oversimplifying the '833 Patent's claims by looking only at the claims' focus as opposed to the conventional structural components and generic communications steps recited in the claims and other details.  Dkt. 27 at 13-15.  But the Federal Circuit has *repeatedly*

rejected this type of argument, recently reconfirming that in the "step one inquiry," courts are to "look[] at the 'focus' of the claims," not the details of the claim limitations. *ChargePoint*, 920 F.3d at 7709; *see Two-Way Media Ltd. v. Comcast Cable Communs.*, *LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017) (court's inquiry appropriately "centered on determining the 'focus' of the claims, and was thus in accord with our precedent"); *Move, Inc. v. Real Est. Alliance Ltd.*, 221 F. Supp. 3d 1149, 1161 (C.D. Cal. 2016) *aff'd in part,* 721 Fed. Appx. 950 (Fed. Cir. 2018) ("courts routinely describe claims at a high level of generality at *Alice* step one.").

Similar to the present case, the claims at issue in *Ex Parte Prabhu* also used a mobile device to communicate and authorize a purchase. *Ex Parte Rajen S. Prabhu And David Chan*, No. APPEAL 2017-000585, 2018 WL 2131670 at *1 (Pat. Tr. & App. Bd., Apr. 27, 2018). The applicants in *Ex Parte Prabhu* insisted that their claims were not directed to an abstract idea because of the claimed technological implementation. The PTAB roundly rejected the idea, noting:

> However, we agree with the Examiner that independent claim 7 is directed to "authorizing [a] point of sale transaction using a mobile card" (Ans. 4; *see also* Non-Final Act. 3) and is similar to certain fundamental economic and conventional business practices that our reviewing courts have found patent ineligible, like intermediated settlement ….***Furthermore, as in Alice, we need not labor to delimit the precise contours of the "abstract ideas" category in this case. It is enough to recognize that there is no meaningful distinction in the level of abstraction between the concept of an intermediated settlement in Alice and the concept of authorizing a point of sale transaction using a mobile card at issue here.***

*Id.* at *3 (emphasis added). Exactly like the claims in *Ex Parte Prahbu,* the '833 Patent's claims are directed to the abstract idea of using an intermediary (mobile device) to authorize a financial purchase. *Id.*; *see also* Dkt. 27 at 14. While Plaintiff notes that Patent Trial and Appeal Board (PTAB) precedent is not binding on district courts, district courts may and do treat PTAB rulings as persuasive. *See Fortinet, Inc. v. Sophos, Inc.,* No. 13-cv-05831, 2015 WL 6513655, at *8 (N.D. Cal. Oct. 28, 2015) (PTAB ruling "although not binding in anyway" is "persuasive."); *Checkfree Corp. v. Metavante Corp*., No. 3:12–cv-15-J-34JB, 2014 WL 466023, at *4 (M.D. Fla. Jan. 17, 2014) (noting benefit of "valuable expert insight" from the PTAB).

In fact, in the majority of § 101 cases, courts have characterized claims at a relatively high level of abstraction. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct., 189 Led. 2d 296 (2014) (claims directed to a "intermediated settlement"); *Mortg. Grader, Inc. v. First Choice*

*Loan Servs.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (system claim "directed to the abstract idea of 'anonymous loan shopping'"); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) (claims directed to "detecting credit card fraud based on information relating to past transactions"). The focus of the '833 Patent's claims is an abstract financial transaction.

        3.    *The '833 Patent's Claims are Nothing Like the Genuine Technical Improvements Found Eligible.*

Like virtually every patentee facing a motion to dismiss under § 101, Plaintiff contends that its patent claims are analogous to those in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) and *Enfish, LLC v. Microsoft Corp.,* 822 F.3d 1327 (Fed. Cir. 2016). Dkt 27 at 10-11. Yet Plaintiff fails to identify any aspect of the '833 Patent's claims that is even remotely similar to the *DDR* or *Enfish* claims. *Id.*

In fact, the '833 Patent claims are more analogous to the abstract claims *distinguished* in *DDR*, wherein the patents "broadly and generically claim" the use of conventional technology "to perform an abstract business practice." *Id.* at 1258. The claims addressed in *Enfish* were found not to be abstract because they recited a "self-referential table" that "function[ed] differently than conventional database structures" and actually improved "computer functionality itself." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1366 (Fed. Cir. 2016. There is nothing in the '833 Patent's claims that is even remotely analogous to the self-referential database of *Enfish*. Nor do Plaintiff's Patent claims compare to the other genuine technological improvements cited in its brief, such as fundamental improvements to computer memory design, new kinds of computer file systems, or improvements to the operations of computers. Dkt. 27 at 10-11.

The '833 Patent's claims entail a vending machine communicating with a mobile device and asking it to request financial authorization, the mobile device requesting authorization from a server, the mobile device telling the vending machine that it has authorization, and the purchase being triggered. *See* Dkt. 19 at 12. The '833 Patent's specification concedes that all of these tasks are performed using existing technology. *See* Dkt. 19 at 4-6 citing Dkt. 1-1 at 1:25-26; 13:4-6; 13:40-55; 13:63-14:7; 17:25-35. By the '833 Patent's own admission, then, the purportedly novel feature of the '833 Patent is the application of these known technologies to the abstract task of authorizing a financial transaction. Dkt. 27 at 9-10. There is no representation that any of these tasks is done in a technologically new manner, and the '833 Patent's claims are not patent eligible. Dkt. 27 at 9.

### C. The '833 Patent Contains No Inventive Concept Sufficient to Transform the Claims.

Plaintiff asserts that the '833 Patent claims contain "multiple inventive concepts" that transform the claims into patent-eligible subject matter. Dkt. 23 at 11-12. The only inventive concept identified by Plaintiff for its asserted claims is the use of a mobile device to pass communications from the claimed retail machine to a server and back to the retail machine. *Id.* Plaintiff later argues that KioSoft "ignores" features such as: the identification of a vending machine based on a wireless transmission; the use of an "authorization code" transmitted to a vending machine; the act of pre-authorizing a purchase before product selection based on the authorization code; and the use of a "cashless transaction." Dkt. 27 at 13-14. None of these limitations constitutes an "inventive concept" that "improve[s] a computer as a tool" *See Interval Licensing LLC,* 896 F.3d at 1345.

The fundamental problem of Plaintiff's purported "inventive concept" can be seen once the abstract task of financial authorization and purchase is stripped from the '833 Patent's claims. The use of a mobile device to pass communications from the vending machine to the server merely involves transmission of data from a mobile device to a vending machine. Plaintiff does not and cannot allege that the transmission of data between three parties was inventive. Indeed, courts have found that the mere relaying of communications cannot establish claims as having an inventive concept. *Voip-Pal.Com, Inc. v. Apple Inc.* 375 F. Supp. 3d 1110, 1127 (N.D. Cal. Mar. 25, 2019) (holding that call routing through an intermediary did not render claims eligible). Similarly, the transmission of an authorization code for a purchase to the vending machine, stripped of its abstract financial concept, is merely the transmission of a piece of data from one device to another. *See* Dkt. 1-1 at 29:29-58. The "identification" based on a transmission is simply the transmission of identification data from the vending machine to the mobile device. Dkt. 1-1 at claim 1. The '833 Patent is clear that these communications are not technical improvements to how transmission is performed, but rather cover any number of conventional prior art formats. *See* Dkt. 19 at 5 citing Dkt 1-1 at 13:40-55 and 17:25-35.

The use of computers to perform a "cashless transaction" or the use of technology to authorize a purchase before a transaction has been rejected repeatedly as ineligible. *See e.g. Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d at 1374 (Fed. Cir. 2017) (holding that computerization of financial transactions are presumptively invalid); *OIP Tech,* 788 F.3d at

1362-63 (computer optimization of prices invalid); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (guaranteeing a party's performance in a transaction found invalid).

Courts routinely find no inventive concept when, as here, "claims are implemented using generic mobile device technology that existed well before the priority date." *Inventor Holdings, LLC v. Gameloft, Inc.*, 135 F. Supp. 3d 239, 253 (D. Del. 2015). A claim must do more than speed up or improve the communications of a financial process with technology, it must fundamentally alter that process.

> Similarly, in the "transmitting" step, the wireless device merely receives a correlated transaction amount transmitted by the merchant… ***Viewed as a whole, the recited methods of the challenged claims simply describe a transaction between a customer and a merchant, assisted or facilitated, but not fundamentally altered, by the use of a wireless device***.

*Square, Inc. et al. v. Unwired Planet, LLC et al.*, Case CBM2014-00156, slip op at 30-31 (Pat. Tr. App. Bd. Dec. 22, 2015) (Paper 40) (emphasis added). Like the "transmitting" of financial information considered by the PTAB in *Square* above, the transmission of an authorization request or code does not constitute an "inventive" concept because it merely constitutes the application of known wireless technology to abstract financial information.

Plaintiff also argues that its claims must have an inventive concept because they were allowed over the prior art. Dkt. 27 at 12. Under Plaintiff's argument, *any* patent that was allowed by the Patent Office would be immune to challenge at the motion to dismiss stage. However, this argument has repeatedly been rejected.

> it is important to distinguish novelty and obviousness from the "inventive feature" inquiry required by the Supreme Court in *Alice*. To be novel, a patent claim must include an element not present in the prior art. *See* 35 U.S.C. § 102. By contrast, the inventive feature question concerns whether the patent adds something to the abstract idea that is "integral to the claimed invention...."

*Cogent Med., Inc. v. Elsevier Inc.*, 70 F. Supp. 3d 1058, 1066 (N.D. Cal. Sept. 30, 2014) (citing *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir.2012)); *see also In re Morsa*, 809 Fed. Appx. 913, 917 (Fed. Cir. 2020) ("abstractness, novelty, and non-obviousness are separate legal and factual concepts"). Indeed, the Examiner in the prosecution of the '833 Patent did not consider eligibility under 35 U.S.C. § 101, which is why Plaintiff relies on citations to other patents. Dkt. 27 at 16; Dkt 27-2. Like the patentee, in *Cogent Medicine*, Plaintiff's application of known technology of wireless transmission to the

abstract task of financial authorization may not have been in the prior art of record during prosecution, but this does create an "inventive concept" that renders the claims patent eligible. *Cogent Medicine*, 70 F. Supp. 3d at 1066.

As a matter of law, the Court is not obligated to treat the allowance of the claims over the prior art as relevant or significant to the second half of the *Alice* analysis. Because Plaintiff cannot rely on the legally irrelevant allowance of its claims over the prior art to create a factual dispute, the Court need not defer its determination of the instant Motion. *See Bridge & Post, Inc. v. Verizon Communs., Inc.*, 778 Fed. Appx. 882, 894 (Fed. Cir. 2019) (court "was not required to accept [plaintiff's] legal conclusions as true, even if couched as factual allegations").

Plaintiff also cites to the allowance of a related patent, U.S. Patent No. 9,659,296, as purported support for Plaintiff's meritless position that the conventional technology recited in the '833 Patent's claims presents an inventive concept. Dkt. 27 at 16. This argument fails because the office action in that related patent occurred in 2014, shortly after the Supreme Court's *Alice* decision and before that decision had been interpreted by the Patent Office or federal courts. *See* Dkt. 27-3.

Plaintiff does not and cannot argue that using a mobile device to pass communications from one party to another or to perform computational tasks was not known in the art. It is only the application of this known technology to the abstract task of seeking financial authorization that Plaintiff contends to be inventive. Dkt. 27 at 11-13. Accordingly, Plaintiff does not and cannot identify any inventive concept and the '833 Patent's claims should be found invalid.

### D. The Unasserted Claims Cannot Salvage Plaintiff's Complaint.

Plaintiff cannot rely on the unasserted Patent claims to prevent the dismissal of its Complaint. For the reasons set forth in KioSoft's Memorandum, none of the independent and dependent claims are non-abstract, and none of the Patent claims offer any inventive technical solution. *See* Dkt. 19 at 18-19. Plaintiff nods toward the supposed technical concepts such as a "payment zone" in its dependent claims or the use of long- and short-range transceivers in unasserted independent claims. Dkt. 27 at 13-15. However, Plaintiff does not and cannot dispute that the claimed technical features such as measuring distance (its payment zones) and using different types of unspecified transceivers were known technically in the art and therefore comprise more of the same application of conventional technology to automate the abstract financial transaction. Dkt. 27 at 16-17. The specification of the '833 Patent confirms that distance

is measured using conventional methods such as wireless strength or accelerometers. Dkt. 1-1 at 10-63:11-16. Similarly, the '833 Patent describes the transceivers as conventional and covering any number of known technologies. Dkt. 1-1 at 13:27-44. Plaintiff only alleges that an inventive concept arises from the application of those known measuring techniques and known transceivers to the abstract task of authorizing a transaction.

Plaintiff's Complaint does not allege infringement of any '833 Patent claims other than claim 1. *See generally* Dkt. 1. Plaintiff's Complaint also does not plead facts necessary to implicate claims other than claim 1 in accordance with the standards for such assertions set forth in *Twombly* and *Iqbal*. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Absent such pleadings, this Court has held that dependent claims must be dismissed. *Thermolife Int'l, LLC v. Vitamin Shoppe, Inc.*, No. 0:16-cv-60693, 2016 WL 6678525, at *2-3 (S.D. Fla. June 8, 2016) (dismissing counts alleging infringement of dependent claims for which the Plaintiff did not set forth facts supporting infringement). Unlike the plaintiff in *Thermolife*, however, Plaintiff did not assert the '833 Patent's dependent claims in the Complaint and accordingly cannot rely on those dependent claims to avoid dismissal.

      **E.** **Any Amendment by Plaintiff would be Futile.**

Plaintiff, as a last resort, asks for permission to amend its Complaint to plead purportedly disputed facts that would enable it to pursue assertion of its invalid Patent. Such a request should be denied. No amendment can cure the fundamentally abstract nature of the claims of the '833 Patent. Nor can Plaintiff plead facts establishing that the claimed technical features are inventive or transformative when the '833 Patent and the inherent part of Plaintiff's Complaint concede that they were well known and generic. *See* Dkt. 19 at 4-6 (citing Dkt. 1-1 at 1:25-26; 13:4-6; 13:40-55; 13:63-14:7; 17:25-35).

**III.** **CONCLUSION**

For at least the foregoing reasons, KioSoft respectfully requests that the Court find the claims of the '833 Patent invalid under 35 U.S.C. § 101. KioSoft also requests that the Court grant this Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6) and dismiss the present action with prejudice.

Dated: March 23, 2021                              Respectfully submitted,

                                                          /s/ John A. Camp

John A. Camp
Florida Bar Number 848115
Ice Miller LLP
7300 Biscayne Boulevard, Suite 200
Miami, Florida 33138
Phone:  305-341-9055
John.Camp@icemiller.com

Holiday W. Banta, *pro hac vice*
Ice Miller LLP
One American Square, Suite 2900
Indianapolis, IN 46282
Phone:  317-236-5882
Facsimile:  317-592-4226
H.Banta@icemiller.com

Christian H. Robertson II, *pro hac vice*
Ice Miller LLP
20 F St NW, Suite 850
Washington, DC 20001
Phone:  202-807-4021
Facsimile:  202-807-4022
Christian.Robertson@icemiller.com

T. Earl LeVere, *pro hac vice*
Ice Miller LLP
250 West Street, Suite 700
Columbus, OH 43215
Phone:  614-462-1095
Facsimile:  614-228-4847
Earl.LeVere@icemiller.com

Bryon Wasserman, *pro hac vice*
Ice Miller LLP
1735 Market Street, Suite 3450
Philadelphia, PA 19103
Phone:  215-377-5029
Facsimile:  215-982-5169
Bryon.Wasserman@icemiller.com

*Counsel for Defendants KioSoft
Technologies, LLC and TechTrex, Inc.*

# CERTIFICATE OF SERVICE

I, John Camp, do further certify that I have caused a true and correct copy of the Reply Brief in Support of Defendants KioSoft Technologies, LLC's and TechTrex, Inc.'s Motion to Dismiss Plaintiff's Claim for Infringement of The '833 Patent (Count I) to be electronically mailed to all counsel of record included in the service list below on March 23, 2021 and that I have this day caused a true and correct copy of the same to be filed through the Court's ECF system, which system has sent notice to all counsel of record.

This, the 23rd day of March, 2021.

/s/ John A. Camp
John A. Camp

# SERVICE LIST

*PayRange Inc. v. KioSoft Technologies, LLC and TechTrex, Inc.*
Case No.:  1:20-cv-24342-RNS
United States District Court, Southern District of Florida

| | |
|---|---|
| Joseph R. Englander<br>FOWLER WHITE BURNETT<br>1395 Brickell Avenue, 14th Floor<br>Miami, Florida 33131<br>Telephone: (305) 789-9259<br>Facsimile: (305) 728-7559<br>Email:  jenglander@fowler-white.com<br><br>*Counsel for Plaintiff PayRange Inc.*<br><br>**VIA ECF** | James C. Yoon<br>Ryan R. Smith<br>Jamie Y. Otto<br>Neil N. Desai<br>George Edward Powell III<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br>Telephone: (650) 493-9300<br>Facsimile: (650) 565-5100<br>Email: jyoon@wsgr.com, rsmith@wsgr.com,<br>jotto@wsgr.com, ndesai@wsgr.com,<br>epowell@wsgr.com<br><br>**VIA ECF** |

4818-0377-4178.1

---

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

4818-0377-4178.4

12