UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:20-cv-24342-RNS

| | |
|---|---|
| PAYRANGE, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| KIOSOFT TECHNOLOGIES, LLC and | ) |
| TECHTREX, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
KIOSOFT TECHNOLOGIES, LLC AND TECHTREX, INC.'S
<u>PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

Memorandum of Law ................................................................................................................ 1

I.   INTRODUCTION ........................................................................................................... 1

II.  LEGAL STANDARD ...................................................................................................... 2

    A.  Motions to Dismiss Under Rule 12(b)(6)............................................................. 2
    B.  Invalidity Under 35 U.S.C. § 101 .......................................................................... 2
    C.  Dismissal Under § 101 at the Pleading Stage Is Permissible. ............................... 3

III. ARGUMENT .................................................................................................................... 4

    A.  The '833 Patent Is Invalid and Unenforceable Under § 101. ............................... 4

        1.  *Alice* Step 1:  The'833 Patent Claims Are Directed to an Abstract Idea..................4
        2.  *Alice* Step 2:  The '833 Patent Claims Do Not Add Inventive Concepts................11
        3.  The '833 Patent Dependent Claims Do Not Cure the Deficiencies of the
           Independent Claims...............................................................................................12

    B.  The '614 Patent Is Invalid and Unenforceable Under § 101. ............................ 14

        1.  *Alice* Step 1:  The'614 Patent Claims Are Directed to an Abstract Idea...............14
        2.  *Alice* Step 2:  The '614 Patent Claims Do Not Add Inventive Concepts..............17
        3.  The '614 Dependent Claims Do Not Cure the Deficiencies of the Independent
           Claims...................................................................................................................18

    C.  Claim Construction is Unnecessary to Resolve this Motion. ............................ 19
    D.  Claims Other than Claim 1 for the Alleged Patents Should be Dismissed Because of
        Plaintiff's Failure to Allege Any Factual Basis For Those Claims. ................. 20

IV. CONCLUSION ................................................................................................................ 20

CERTIFICATE OF SERVICE ............................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1128
(Fed. Cir. 2018) ....................................................................................................3, 4

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345
(Fed. Cir. 2013) ........................................................................................................8

*Affinity Labs of Tex., LLC v. DIRECTV, LLC,* 838 F.3d 1253, 1260 (Fed. Cir. 2016) .....11, 14, 17, 18

*Alice Corp. Pty. v. CLS Bank Int'l,* 573 U.S. 208, 217, 134 S. Ct. 2347, 2354 (2014)..............*passim*

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ...............................................................1, 2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ...........................................1, 2

*Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) .............................................4

*BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1291, n.1 (Fed. Cir. 2018) ..................14, 16, 18

*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, No. CV 17-5169-GW(FFMX),
2018 WL 2558385, at *8 (C.D. Cal. Feb. 12, 2018).........................................................20

*Clarilogic, Inc. v. Formfree Holdings Corp.*, 681 Fed. Appx. 950, 954 (Fed. Cir. 2017) ................8, 17

*Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347
(Fed. Cir. 2014) ................................................................................................3, 19, 20

*Credit Acceptance Corp. v. Westlake Services*, 859 F.3d 1044, 1056 (Fed. Cir. 2017) ...................11

*Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-56 (Fed. Cir. 2016)...................1, 3, 8, 18

*Epic Tech, LLC v. Fusion Skill, Inc., et al, No. 4-19-cv-02400, 2021 WL 1393868,*
*at *2 (S.D. Tex. Apr. 13, 2021)* ...................................................................................9

*Ex Parte Latoya H. James* 2019 WL 2763407 at *4-*6 (P.T.A.B. June 21, 2019) ..........12, 15, 16

*Ex Parte Oliver S. C. Quigley, Nathan McCauley, And Bob Lee* 2019 WL 366814
(Patent Tr. & App. Bd. January 15, 2019) ...................................................................10

*Ex Parte Rajen S. Prabhu And David Chan*, 2018 WL 2131670 (2018).....................................9, 10

*Fidelity National Information Services, Inc. v. DataTreasury Corp*., CBM2014-0020,
Op. at 15-17 (P.T.A.B. Apr. 29, 2015) ........................................................................13

*Fort Props, Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1322 (Fed. Cir. 2012) ...................11, 16

*Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016) .....................................3

*In re Mohapatra, No. 2020-1935, 2021 WL 408755, at *3 (Fed. Cir. Feb. 5, 2021)* ...................3, 15

*In re TLI Communs. LLC Patent Litig.*, 823 F.3d 607, 613-14 (Fed. Cir. 2016) .................................4

*Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1331 (Fed. Cir. 2017)..................8, 17

*Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016) ......................2

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.,* 876 F.3d 1372, 1374, 1379
(Fed. Cir. 2017) ................................................................................................7, 15, 19

*Inventor Holdings, LLC v. Gameloft, Inc.*, 135 F. Supp. 3d 239, 253 (D. Del. 2015)...........................11

*IPLearn-Focus, LLC v. Microsoft Corp.*, No. 14-cv-00151-JD, 2015 WL 4192092,
at *3 (N.D. Cal. July 10, 2015.....................................................................................19

*Maxon, LLC v. Funai Corporation, Inc.*, 726 Fed. Appx. 797, 800 (Fed. Cir. 2018)............................8

*Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 72 132 S. Ct. 1289,
1296-97 (2012) ...........................................................................................3, 11, 17

*Mobile Telecomms. Techs., LLC v. United Parcel Serv., Inc.*, 173 F. Supp. 3d 1324,
1336 (N.D. Ga. 2016).................................................................................................1

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018)........................................3, 15

*Square, Inc. et al. v. Unwired Planet, LLC et al., Case CBM2014-00156, slip op at 30-31 (P.T.A.B. Dec. 22, 2015)* ...........................................................................................................................11, 12

*Tranxition, Inc. v. Lenovo (United States) Inc.*, 664 F. Appx. 968, 971 (Fed. Cir. 2016).........3, 17, 18

*Werteks Closed Joint Stock Co. v. Vitacost.com, Inc.*, No. 16-CV-60695, 2016 WL 5076169, at *3 (S.D. Fla. Sept. 20, 2016)...............................................................1, 2, 20

*Wireless Media Innovations v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 410 (D.N.J. 2015) ...................................................................................................................................20

## FEDERAL STATUTES

Fed. R. Civ. P. Rule 12(b)(6) ........................................................................................1, 2, 3, 20

35 U.S.C. § 101 ...........................................................................................................................*passim*

<u>**MEMORANDUM OF LAW**</u>

**I.     INTRODUCTION**

The Court should dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) Plaintiff PayRange, Inc.'s ("Plaintiff") claims that KioSoft infringed upon Plaintiff's alleged U.S. Patent Nos. 10,719,833 (the "'833 Patent") (Count I) and 10,891,614 (the "'614 Patent") (Count III) because those alleged patents are directed to unpatentable subject matter under 35 U.S.C. § 101. Under controlling Supreme Court law, patents like the '833 Patent and '614 Patent, which attempt to circumvent the patent laws by couching abstract ideas under the guise of well-known technology, are invalid and thus unenforceable under § 101.  *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) ("*Alice*").

As district courts in the Eleventh Circuit have recognized, a § 101 defense "raises a threshold question of patent validity" that is "fundamental to [a plaintiff's] ability to recover." *Mobile Telecomms. Techs., LLC v. United Parcel Serv., Inc.*, 173 F. Supp. 3d 1324, 1336 (N.D. Ga. 2016).  The '614 Patent essentially describes a person making a purchase through a mobile phone (*see* ECF No. 17 at 5-8; *see also* ECF No. 17-3 at Abstract), while the '833 Patent contemplates authorization of that purchase (*see* ECF No. 17 at 10-12; *see also* ECF No. 17-1 at Abstract), and both ideas use existing wireless and mobile technology.

For a computer-based concept to be patentable, the claimed concept must improve the computer or mobile device itself, rather than simply improving a fundamental human process like authorizing and making a purchase.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).  The '833 Patent and '614 Patent claims are directed to abstract ideas, namely the attempt to improve fundamental human processes.  Therefore, the concepts disclosed in the '833 Patent and '614 Patent are not eligible for patenting under § 101.

Also, the Amended Complaint does not meet the pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The Amended Complaint does not allege a factual basis for Plaintiff's infringement claims for each of the '833 Patent claims, the '614 Patent claims, and the claims of alleged U.S. Patent No. 10,891,608 (the "'608 Patent") (Count II) (collectively, the "Alleged Patents").  *See, e.g. Werteks Closed Joint Stock Co. v. Vitacost.com, Inc.*, No. 16-CV-60695, 2016 WL 5076169, at *3 (S.D. Fla. Sept. 20, 2016).  While the Amended Complaint does allege infringement of "at least claim 1" of the Alleged Patents, the Amended Complaint does not even attempt to allege any factual

basis for any claims in any of the Alleged Patents other than claim 1. *See generally* ECF No. 17. The Court should therefore dismiss the Amended Complaint for failure to state a claim with respect to the unspecified claims of the Alleged Patents, particularly in view of the fact that Plaintiff has *already* amended its original Complaint. *Compare* ECF No. 1 *with* ECF No. 17.

## II.    LEGAL STANDARD

### A.    Motions to Dismiss Under Rule 12(b)(6).

Courts may dismiss claims that fail to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). As such, the allegations in a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* And, while a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010).

Courts may dismiss a patent infringement count to the extent it alleges infringement of patent claims for which the plaintiff fails to put forth facts that allow the court to make a reasonable inference that the defendants have infringed those claims. *Werteks Closed Joint Stock Co.*, 2016 WL 5076169, at *3 (dismissing complaint as to claims 2 and 3 of the asserted patent when Plaintiffs only alleged facts as to claim 1 of the asserted patent).

### B.    Invalidity Under 35 U.S.C. § 101.

The Patent Act defines patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. However, abstract ideas, as well as laws of nature and natural phenomena, are exceptions to these statutory categories of patentable subject matter because abstract ideas, laws of nature, and natural phenomena are the "building blocks of human ingenuity." *Alice*, 134 S. Ct. at 2354. The claims of the '833 and '614 Patents fall into the "abstract ideas" category, which category embraces "fundamental economic practice[s] long prevalent in our system of commerce," including "longstanding commercial practice[s]." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016).

Courts apply a two-step test to determine whether patent claims are directed to patent-ineligible subject matter. Step one asks whether the claims at issue are directed to a patent ineligible concept, which includes abstract ideas. *Alice*, 134 S. Ct. at 2355. If so, the inquiry proceeds to

step two, which asks whether there are additional elements in the claims that "*transform* the nature of the claim into a patent-eligible application," *i.e.*, the "search for an inventive concept." *Alice*, 134 S. Ct. at 2355 (emphasis added); *see also Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 72; 132 S. Ct. 1289, 1296-97 (2012).

"The first stage of the *Alice* inquiry looks at the 'focus' of the claims [and] their 'character as a whole." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (citing cases). As to abstract ideas, "[a] claim does not cease to be abstract for section 101 purposes simply because the claim confines the abstract idea to a particular technological environment in order to effectuate a real-world benefit." *In re Mohapatra*, No. 2020-1935, 2021 WL 408755, at *3 (Fed. Cir. Feb. 5, 2021) (citing cases).

The second stage of the inquiry "looks more precisely at what the claim elements add—specifically, whether, in the Supreme Court's terms, they identify an 'inventive concept' in the application of the ineligible matter to which . . . the claim is directed." *SAP Am., Inc.*, 898 F.3d at 1167. Claim "elements [that] involve 'well-understood, routine, and conventional activity . . . do not constitute an inventive concept." *Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1128 (Fed. Cir. 2018) (quoting *Mayo*, 132 S. Ct. at 1289) (internal quotation marks omitted).

Improving a computer itself is patentable, while using a computer to improve a normal human task is not. *See Elec. Power Grp., LLC*, 830 F.3d at 1354. To be sufficiently inventive to be worthy of a valid patent, claims implemented on a computer must be "'directed to an *improvement to computer functionality* versus being directed to an abstract idea."" *Tranxition, Inc. v. Lenovo (United States) Inc.*, 664 F. Appx. 968, 971 (Fed. Cir. 2016) (emphases added) (quoting *Enfish LLC v. Microsoft Corp*., 822 F.3d 1327, 1335 (Fed. Cir. 2016)). The focus of claims is on the improvement in computers as tools, rather than independently abstract ideas that use computers as tools. *Elec. Power Grp., LLC*, 830 F.3d at 1354.

### C.    Dismissal Under § 101 at the Pleading Stage Is Permissible.

Courts may properly determine § 101 patentability at the pleading stage, including relative to a Rule 12(b)(6) inquiry. *See Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under . . . § 101 on a Rule 12(b)(6) motion"); *see*, *e.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).

Although the *Alice* step-two determination of whether something is "well-understood, routine, and conventional" is an issue of fact, the Federal Circuit has confirmed that "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Rather, when, as here, claims recite only routine computer components for performing conventional computer functionality, no underlying factual disputes exist to prevent a § 101 determination on the pleadings. *See, e.g., In re TLI Communs. LLC Patent Litig.*, 823 F.3d at 613-14. Likewise, this Court can assess whether the claim elements are well understood, routine, or conventional "based on the sources properly considered on a motion to dismiss, such as the complaint, the patent, and materials subject to judicial notice." *Aatrix Software*, 882 F.3d at 1128. Resolution of the question of patent eligibility through the present Motion to Dismiss is appropriate in view of the controlling law.

## III.   ARGUMENT

The claims of the '833 and '614 Patents are, by any accounting, unpatentable. Concerning *Alice* step one, the '833 Patent's claims are directed to the abstract idea of authorizing and then performing financial transactions. Similarly, the '614 Patent's claims are directed to the abstract idea of identifying a merchant and making a purchase. Concerning *Alice* step two, there is no inventive concept in either Patent.

### A.   The '833 Patent Is Invalid and Unenforceable Under § 101.

#### 1.   *Alice* Step 1:  The '833 Patent Claims Are Directed to an Abstract Idea.

Claim 1 of the '833 Patent (the only claim Plaintiff specifically accuses KioSoft of infringing) recites the following method steps utilized by an "automatic retail machine" and a mobile device having a display, processor, and memory:

> [(a)] *identifying* the automatic retail machine based at least in part on a transmission received from an electronic payment device of the automatic retail machine;
>
> [(b)] in response to identifying the automatic retail machine, *obtaining*, from the electronic payment device, a request, via the communications unit of the mobile device, to preemptively obtain authorization to make funds available for a cashless transaction with the automatic retail machine;
>
> [(c)] *sending*, to a server, the request via the communications unit of the mobile device;
>
> [(d)] in response to sending the request to the server, *obtaining* from the server an authorization grant of an amount of funds for use in conjunction with the cashless transaction with the automatic retail machine;

---

[(e)] *detecting*, by an application executing on the mobile device, a trigger condition to perform the cashless transaction with the automatic retail machine; and

[(f)] in response to detecting the trigger condition, *sending* to the electronic payment device the authorization grant to enable completion of the cashless transaction at the automatic retail machine.

ECF No. 17-1 at cl. 1 (identifying letters and emphasis added). Independent claims 14 and 21 recite identical subject matter, with independent claim 14 reciting a generic "system" that performs the claimed functions and claim 21 reciting computer instructions for performing those functions. ECF No. 17-1 at cl. 14 and 21.

The '833 Patent is directed to a method for using a mobile device to authorize a purchase at a vending machine and then to execute that purchase. ECF No. 17-1 at Abstract. The '833 Patent emphasizes its use of conventional technology to perform abstract tasks at the end of its Background section, noting, "[a]s the number of people with Internet-connected mobile devices proliferates, so does the variety of uses for such devices. Mobile payment is a logical extension." *Id.* at 1:57-59. In describing its purported invention, the '833 Patent notes that "the mobile-device-to-machine payment processing system disclosed herein allows a user (having a mobile device 150 with a mobile application 140 thereon) to make a cashless purchase from a payment accepting unit 120 (having an adapter module 100 associated therewith)." *Id.* at 2:57-59.

The '833 Patent achieves this fundamentally abstract goal by providing a "system for facilitating a cashless transaction for purchase of at least one product or service" through a "mobile device that has both short-range communication technology and long-range communication technology." *Id.* at 3:49-55. The '833 Patent's disclosed system identifies a local "automatic retail machine" (*e.g.*, vending machine) with which a mobile device may complete a transaction based at least in part on a "transmission" from the automatic retail machine. *Id.* at cl. 1. The '833 Patent does not recite any technological limitation on how this step is performed. *Id.* In response to this identification step, the automatic retail machine requests that the mobile device obtain authorization for a purchase from a server. *Id.* The mobile device then requests and receives authorization from the server, following which, in response to an unspecific "trigger condition," the mobile device executes the purchase. *Id.*

These steps present an entirely abstract financial process that has been performed for centuries: (1) A customer identifies a vendor; (2) obtains permission for a purchase from a third party (e.g., calls a bank to verify a balance, conducts a credit check, asks his mother if he can buy

something in the store); and (3) performs the transaction.  In the '833 Patent, these abstract well-known steps are performed with well-known, generic mobile technology.

Indeed, the '833 Patent specification acknowledges that the components of the claimed method and system are conventional computer and mobile device components that operate in their normal capacity to perform conventional computing activities.  For instance, the specification of the '833 Patent concedes that "automatic retailing machines" "have been around for thousands of years."  *Id.* at 1:25-26.

When describing "payment accepting units" that can accept payment for services and goods, the '833 Patent notes that these payment accepting units are entirely conventional and generic and not limited:

> Payment Accepting Unit 120 (or Machine 120): A payment accepting unit 120 (or machine 120) is equipment that requires payment for the dispensing of a product and/or service.  Payment accepting units 120 may be vending machines, parking meters, toll booths, laundromat washers and dryers, arcade games, kiosks, photo booths, toll booths, transit ticket dispensing machines, and other known or yet to be discovered payment accepting units 120.

ECF No. 17-1 at 13:4-6.  To the extent that Plaintiff is alleging that "automatic retail machines" are merely vending machines that dispense goods, then automatic retail machines are conventional machines.  *Id.* at 1:25-34.

Concerning the "communications" contemplated by the '833 Patent (the claimed step in which a mobile device identifies the automatic retail machine based on a transmission and subsequent steps involving communications among the mobile device, retail machine, and server), these communications contemplate the use of entirely conventional communication protocols not limited to any particular technology:

> The terms "messages," "communications," "signals," and/or "transmissions" include various types of information and/or instructions including, but not limited to, data, commands, bits, symbols, voltages, currents, electromagnetic waves, magnetic fields or particles, optical fields or particles, and/or any combination thereof. Appropriate technology may be used to implement the "communications," "signals," and/or "transmissions" including, for example, transmitters, receivers, and transceivers.

*Id.* at 17:25-35.  The '833 Patent elaborates on the generic and unrestricted nature of the communication protocols used by the claimed "communications unit":

Communications between user mobile devices 150 and the servers (e.g. a system management server 130 and/or a funding source server 160) take place using long-range communication technology.  Communications between user mobile devices 150 and the adapter module 100 of the payment accepting unit 120 take place using "short-range communication technology" (e.g. Bluetooth (e.g. Bluetooth 4.0, Bluetooth Smart, Bluetooth LE (Low Energy), near-field communication, Ultra Wideband (UWB), RFID, infrared wireless, induction wireless, or any wired or wireless technology that could be used to communicate a small distance (e.g. approximately a hundred feet or closer) that is known or yet to be discovered).

*Id.* at 13:40-53.

It is undeniable that the claims of the '833 Patent are directed to the use of conventional wireless and mobile-device technology to conduct a financial transaction.  This fact creates a strong presumption of ineligibility, as courts have repeatedly recognized that claims directed to financial transactions are abstract.  *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.,* 876 F.3d 1372, 1374, 1379 (Fed. Cir. 2017) (finding the claims directed to ineligible subject matter, awarding attorneys' fees to the defendant, and noting "the '582 patent's claims are directed to an 'economic arrangement' implemented using 'generic computer technology.'  These issues were significant, if not determinative, of the Court's holding in *Alice*.").  Indeed, the plaintiff's assertion of financial transaction claims weighed heavily in the *Inventor Holdings* decision to award sanctions.  *Id.*

The specification of the '833 Patent makes clear that the abstract communications concepts disclosed therein are not tied to a novel technological environment.  *See e.g.* ECF No. 17-1 at 1:57-59, 13:4-6, 17:25-35.  Rather, the disclosed communications protocols cover virtually any communication format, computer hardware, mechanism of communication, and wireless transmission protocol.  *See id.* at 17:25-35.  The following element-by-element review of the claims, using general terms for purposes of explanation, further demonstrates the abstract nature of the claims:

   i.   Step (a) recites locating or identifying a merchant that is currently available to perform a financial transaction.  This is a task that can be done with the human mind.

   ii.  Step (b) recites determining that an authorization for a financial transaction is necessary before a purchase is made.  This is a step performed whenever a customer asks a store to check her or his on-site credit limit, whenever a bank is asked to check the amount of funds present in the customer's account, or even whenever a child asks a parent for permission to buy something.

   iii. Steps (c) and (d) recite using a server for authorization to perform a purchase and subsequently receiving purchase authorization from the server.  These are fundamental

exchanges required to perform the abstract financial task of obtaining approval for payment from a third party and are no different than a customer calling a bank to check on an account balance to make sure that sufficient funds are available for the purchase.

    iv.    Step (e) recites finding a "trigger condition" necessary to complete the purchase. According to the '833 Patent, the trigger condition is likely a condition or conditions such as the user's proximity to the vending machine and/or a selection of something on the mobile application, and/or a manual selection of an item to purchase on the automatic retail machine. These options are equivalent to a customer picking a drink off a menu and/or a salesperson or clerk determining that the customer is within range to hand over a credit card or cash to make a purchase.

    v.    Step (f) recites the act of actually performing the financial transaction.

The claims of the '833 Patent are unpatentable because they recite the basic, abstract steps of entering a store, the store checking the customer's available credit (or calling a bank to do so), and, when the customer decides on the item, completing the purchase.

The automatic retail machine, according to Plaintiff's contentions, may cover anything that provides services or goods for money (*e.g.*, vending machines, *etc.*). *Id.* at 13:4-6. The mobile device identifies an available retail machine and then communicates with the retail machine and a server using unspecified radio technology. *Id.* at 13:40-53, 17:26-35. The server is any server that performs payment authorization and processing. *Id.* at 13:63-14:7. The claimed "trigger" condition required for the payment transaction to be completed is indefinite in view of the '833 Patent's specification; however, all of the possible options for this feature comprise generic mobile device technology. *Id.* at 20:58-21:50.

Courts routinely find that claims lack an inventive concept when, as here, the claims "require only off-the-shelf, conventional computer technology" or "conventional components and functions generic to electronic mobile devices." *Clarilogic, Inc. v. Formfree Holdings Corp.*, 681 Fed. Appx. 950, 954 (Fed. Cir. 2017); *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1331 (Fed. Cir. 2017) (no "inventive solution" when claims are "implemented using the conventional components and functions generic to electronic mobile devices."); *Maxon, LLC v. Funai Corporation, Inc.*, 726 Fed. Appx. 797, 800 (Fed. Cir. 2018); *Elec. Power Group, LLC*, 830 F.3d at 1353-56 (no inventive concept when claims require only "off-the-shelf conventional computer . . . technology"). While inventions that improve the computer itself may be patentable, ideas for improving a fundamental human process, such as making a purchase, are not. *Elec. Power Grp., LLC*, 830 F.3d at 1354.

---

The district court in *Epic Tech, LLC v. Fusion Skill, Inc., et al*, recently applied this principle and found a plaintiff's asserted patents invalid under § 101 because the patents sought to protect an abstract idea for the *use* of computers as tools rather than an inventive *improvement* to computers. *Epic Tech, LLC v. Fusion Skill, Inc., et al*, No. 4-19-cv-02400, 2021 WL 1393868, at *2 (S.D. Tex. Apr. 13, 2021). The "purported innovation [was] for the computer server on which the game is played to credit a player's account with the prize corresponding to the selected sweepstakes entry prior to displaying the results." *Id.* The district court found the patents invalid because they did not claim any innovation in computer software. *Id.* "[T]he focus of the claims [was] not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Id.*

The '833 Patent claims are directed to the *use* of computers or mobile devices as tools to accomplish the fundamentally human process of authorizing a user to make a purchase. *See* ECF No. 17-1 at Abstract. Like the district court found in *Epic Tech, LLC*, the '833 Patent claims do not provide for improvements to computers or mobile devices themselves, but instead focus on independently abstract ideas of authorizing purchases that merely use computers or mobile devices as tools. *See Epic Tech, LLC*, 2021 WL 1393868, at *2. For this reason, the '833 Patent's claims are not patentable.

The Patent Trial and Appeal Board (the "Board") handles all U.S. Patent and Trademark Office post-grant proceedings such as *Inter Partes* Reviews and is considered an authority on the patentability of claims. *See* https://www.federalregister.gov/documents/2020/04/20/2020-08344/patent-trial-and-appeal-board-ptab-appeals. The Board has repeatedly held that claims directed to authorizing and executing financial transactions using mobile devices do not recite patentable subject matter.

For example, in *Ex Parte Rajen S. Prabhu And David Chan*, 2018 WL 2131670 (2018) (P.T.A.B., April 27, 2018) the Board confirmed the unpatentability of claims directed to, among other concepts:

> [(a)] **determining**, by the processing system, that the mobile card has been presented as payment in a point-of-sale (POS) transaction, wherein said determining comprises using a POS device to retrieve the card information from the mobile card and receiving the card information and a transaction amount sent from the POS device;

---

[(b)] **determining**, by the processing system, that a mobile phone is associated with the mobile card;

[(c)] **sending** a transaction request to the mobile phone;

[(d)] **receiving** a transaction authorization from the mobile phone;

[(e)] **authorizing** the POS transaction; and

[(f)] **causing the transaction amount to be paid** using a mobile wallet account associated with the mobile phone and the mobile card.

*Ex Parte Prabhu*, 2018 WL 2131670 at *1 (identifying letters and emphasis added). The claims in *Ex Parte Prabhu*, like the '833 Patent's claims, involved seeking authorization wirelessly for a purchase and then executing that purchase wirelessly. The applicants argued that the analytical steps of determining the need for a transaction and executing that transaction rendered the claimed subject matter patent eligible. *Id.* at *4. The applicants further argued that the mobile and bank card technology recited in the claims rendered the subject matter patent eligible. *Id.* The Board rejected these arguments, noting that such steps "amount to nothing more than mere instructions to implement the abstract idea on a computer--none of which add an inventive concept because they merely require the application of conventional, well-known analytical steps." *Id.* The Board also rejected the applicants' claim that the straightforward use of wireless and mobile technology rendered the claims eligible. *Id.* at *4-7.

In another instructive decision, the claims at issue recited a mobile device receiving "a first transaction authorization request message" from a card reader and sending the "authorization request" to a "payment authorization entity." *Ex Parte Oliver S. C. Quigley, Nathan McCauley, And Bob Lee* 2019 WL 366814 (P.T.A.B. January 15, 2019) at *1. The applicants argued that the claimed process improved power consumption and that the recited mobile technology rendered the claims non-abstract. *Id.* at *4. In rejecting the claims, the Board noted that:

> [m]oreover, Appellants do not argue that they invented a payment card, card reader, or mobile device. Nor do we see how the recitation of a payment card, card reader, and mobile device, even in conjunction with the recited functions, 'ensure[s] 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].' In short, claim 1 uses generic computer and peripheral hardware, i.e., payment card, card reader, and mobile device, as a tool to perform the abstract idea.

*Id.* (internal citations omitted).  Just like the claims at issue in this Board decision, the '833 Patent inventors did not invent any technology.  Each of the '833 Patent's claims applies existing technology to an abstract financial task, thereby rendering the '833 Patent unpatentable.

      **2.**     *Alice* **Step 2:  The '833 Patent Claims Do Not Add Inventive Concepts.**

      The limitations recited in the '833 Patent's claims do not add meaningful limitations or recite novel technology that confine the abstract idea so that its use by others is not preempted. The limitations do not include "other elements or a combination of elements, sometimes referred to as the 'inventive concept,'" sufficient to demonstrate that the inventors do not seek to patent the underlying concept.  *Mayo*, 132 S. Ct. at 1294.

      The claims of the '833 Patent are directed to a purchase transaction between a customer and a merchant.  In order to be patentable, the '833 Patent's claims must add "significantly more" than "conventional or obvious" features.  *Id*. at 1294, 1299.  The only features added in the claims of the '833 Patent beyond the purchase transaction concept are "an automatic retail machine," "a mobile device," "a radio transceiver," a "server," and "a mobile payment application," all of which were well known and widely used long before the priority date of the '833 Patent as confirmed by the '833 Patent's citations to well-known technologies for implementation.  ECF No. 17-1 at 13:4-6, 13:40-55, 17:25-35, 13:63-14:7, 20:58-21:50.  The '833 Patent repeatedly makes explicit that these features are merely conventional components used in a conventional manner.  *Id.*

      "[S]imply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable."  *Mayo*, 132 S. Ct. at 1300.  Tying the abstract claims of the '833 Patent to the physical world through inclusion of features like a "server," a "radio transceiver," and a "mobile device" does not make the claims patent-eligible. *Fort Props, Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1322 (Fed. Cir. 2012).

      Courts routinely find no inventive concept in a patent when, as here, "claims are implemented using generic mobile device technology that existed well before the priority date." *Inventor Holdings, LLC v. Gameloft, Inc.*, 135 F. Supp. 3d 239, 253 (D. Del. 2015); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) ("use of generic features of cellular telephones" adds no inventive concept); *Credit Acceptance Corp. v. Westlake Services*, 859 F.3d 1044, 1056 (Fed. Cir. 2017).  As the Board noted in *Square, Inc. et al. v. Unwired Planet, LLC et al*., these conventional uses of known technology to transmit and display information do not render claims patent eligible:

The displaying of point-of-sale locations to potential customers is well-known. Pet. 22 ("For example, shopping malls have had store directories for decades listing a menu of merchants and service providers based on proximity to the customer standing at the directory."); see Tr. 29:7–30:8. Similarly, in the "transmitting" step, the wireless device merely receives a correlated transaction amount transmitted by the merchant… *Viewed as a whole, the recited methods of the challenged claims simply describe a transaction between a customer and a merchant, assisted or facilitated, but not fundamentally altered, by the use of a wireless device*.

*Square, Inc. et al. v. Unwired Planet, LLC et al*., Case CBM2014-00156, slip op at 30-31 (P.T.A.B. Dec. 22, 2015) (Paper 40) (emphasis added). As in *Square, Inc.*, the '833 Patent's claims claim the unpatentable, abstract acts of authorizing a transaction and conducting that transaction. *See also Ex Parte Latoya H. James* 2019 WL 2763407 at *4-6 (P.T.A.B. June 21, 2019) (holding that conventional uses of wireless and touchscreen interface technology used in a conventional manner do not create an inventive concept).

> ### 3.     The '833 Patent Dependent Claims Do Not Cure the Deficiencies of the Independent Claims.

Plaintiff does not claim that any of the dependent claims of the '833 Patent are infringed by KioSoft. *See generally* ECF No. 17. Even if Plaintiff amended its Amended Complaint to assert infringement of any of the dependent claims, the Amended Complaint would still require dismissal. The dependent claims recite generic and conventional computer functions that render them unpatentable.

Claims 2, 6, 15, 19, 22, and 26 are directed to the use of wireless technology to determine whether a user has entered into an "authorization zone" or a "payment zone," which authorization and payment zones are within a certain distance of the automatic retail machine and in which zones a user must be positioned in order to initiate authorization or payment, respectively. *See* ECF No. 17-1 at Figs. 2-3; 4:34-45. Claims 2, 6, 15, 19, 22, and 26 merely recite the act of determining if a user is "close enough," a task that could be performed with human eyes and mind. *Id*. at cl. 2, 6, 15, 19, 22, 26. Particularly, claims 2, 15, and 22 recite verifying that a user meets the "authorization zone" threshold, which threshold simply means whether the user is close enough to the retail machine to have a payment transaction authorized and exchange basic identification information. *Id*. at cl. 2, 15, 22. Claims 6, 19, and 26 determine whether a user is in the "payment zone" before performing a purchase. *Id*. at cl. 6, 19, 26.

Claims 3-5, 7-10, 16-18, 20, 23-25, and 27 are directed to conditioning purchases on transfers of abstract identification information such as unspecified "mobile device information," "user input," or notification and communications functions. *Id*. at cl. 3-5, 7-10, 16-18, 20, 23-25, 27. None of these claims recite any non-abstract features that render the claims patent eligible. *Id.* Claims 3, 16, and 23 recite the generic transmission of abstract information about the mobile device that is used to confirm the mobile device is in the "authorization zone." *Id*. at cl. 3, 16, 23. Claims 4, 17, and 24 recite sending a notification that the "hands free" mode is available, *i.e.*, sending generic abstract information about the services available to the user. *Id*. at cl. 4, 17, 24. Claims 5, 18, and 25 recite using generic identification information from the mobile device to determine if the user is authorized to make a purchase. *Id*. at cl. 5, 18, 25. Claims 7, 20, and 27 identify the claimed "trigger condition" as including an unspecified form of "user input" that is not limited to any technology or implementation. *Id*. at cl. 7, 20, 27. Claims 7, 20, and 27 tie the execution of the financial transaction to conventional and generic uses of conventional mobile technologies. *See generally id*.

Claim 8 recites generically notifying the user that a connection has been formed without tying the notification to a novel technology. *Id*. at cl. 8. Claim 9 recites the abstract task of notifying a user of an amount of funds available for a transaction. *Id*. at cl. 9. Claim 10 recites the abstract tasks of transmitting an identifier for the mobile device, an amount of funds, and authorization information. *Id*. at cl. 10. Communicating and processing abstract information cannot render the '833 Patent's claims patent eligible.

Claim 11 recites that the communications are encrypted with an encryption key. *Id*. at cl. 11. The mere act of encryption, absent additional limiting details, cannot render the claims patent eligible. *Fidelity National Information Services, Inc. v. DataTreasury Corp*., CBM2014-0020, Op. at 15-17 (P.T.A.B. Apr. 29, 2015) (finding encryption claims patent ineligible).

Claim 12 recites the use of a "swipe" gesture to accept user input. ECF No. 17-1 at cl. 12. Swipe gestures were an entirely conventional form of user input. Indeed, the '833 Patent implicitly acknowledges this by not providing any technological details about how to implement a swipe feature. *Id*. at 10:58-11:11. Claim 13 recites that the swipe action is performed on an image of an automatic retail machine, another entirely conventional form of user input. *Id*. at cl. 13. These conventional uses of conventional interface technology cannot render claims 12 and 13 patent eligible.

The dependent claims of the '833 Patent fail to transform the claimed abstract idea into a patentable invention. Each dependent claim recites "functions that are not inventive but simply constitute particular choices from within the range of existing content or hardware." *Affinity Labs*, 838 F.3d at 1264; *BSG Tech. LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1291, n.1 (Fed. Cir. 2018). The '833 Patent claims are directed to an alleged improvement in the fundamental task of authorizing a purchase; they do not disclose an improvement to servers, wireless technology, vending machines, or any other technology. Accordingly, the dependent claims are also patent ineligible, thereby rendering futile any attempt to amend the Amended Complaint to add additional claims.

> **B.      The '614 Patent Is Invalid and Unenforceable Under § 101.**
>
> **1.      *Alice* Step 1: The '614 Patent Claims Are Directed to an Abstract Idea.**

Claim 1 of the '614 Patent recites the following method steps utilized by a mobile device with one or more processors, memory, one or more output devices including a display, and one or more radio transceivers:

> [(a)] *identifying* one or more payment accepting units in proximity to the mobile device that are available to accept payment from a mobile payment application executing on the mobile device, the identifying including detecting predefined radio messages broadcast by the one or more payment accepting units, wherein the one or more payment accepting units are vending machines that accept payment for dispensing of products and/or services;
>
> [(b)] *displaying* a user interface of the mobile payment application on the display of the mobile device, the user interface being configured to display a visual indication of the one or more payment accepting units and accept user input to (i) receive selection by a user of the mobile device of an available payment accepting unit of the one or more payment accepting units and (ii) trigger payment by the mobile payment application for a vending transaction initiated by the user of the mobile device with the available payment accepting unit of the one or more payment accepting units;
>
> [(c)] *establishing* via the one or more radio transceivers a wireless *connection* between the mobile device and the available payment accepting unit of the one or more payment accepting units;
>
> [(d)] after establishing the wireless connection, *presenting* the user interface of the mobile payment application and *enabling user interaction* with the user interface of the mobile payment application to complete the vending transaction;
>
> [(e)] *exchanging information* with the available payment accepting unit via the one or more radio transceivers, in conjunction with the vending transaction; and

---

[(f)] in response to receiving the information, *displaying*, on the display, an updated user interface of the mobile payment application to the user of the mobile device.

*Id.* at cl. 1 (identifying letters and emphasis added). Independent claims 14 and 20 recite identical subject matter in apparatus and computer-readable-medium form. *Id.* at cl. 14 and 20. None of the claims, alone or in combination, transform this disclosure into patent-eligible subject matter.

Focusing on the claims and their "character as a whole," *SAP Am.*, 898 F.3d at 1167, it is undeniable that the claims of the '614 Patent are directed to the use of conventional wireless and mobile-device technology to perform a financial transaction. This fact creates a strong presumption of ineligibility, as courts have repeatedly recognized that claims directed to financial transactions are abstract. *See, e.g.*, *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d at 1374, 1379.

At its core, claim 1 of the '614 does nothing more than perform the steps of using a mobile device and conventional, already-existing technology to: (1) detect a nearby merchant, a vending machine; (2) display unspecified general information and allow unspecified general input to make a purchase; (3) communicate; (4) display that communication to a user and accept input from the user; (5) transmit information regarding a transaction from a vending machine; and (6) display or show the transmitted information to the customer, all of which are done by using the mobile device's existing capabilities. Indeed, if the conventional features of a mobile device and wireless network are removed from the claim, the remaining claim elements can all be performed with the human mind.

Step (a)[1] is directed to a customer detecting a nearby merchant from whom the customer can purchase goods. This can be done completely in the mind of the customer. The addition of conventional graphical interface and of conventional radio broadcast technology does not change this deficiency. *See* discussion of *Ex Parte Latoya H. James*, *infra*. The inclusion of a vending machine does not render the claims non-abstract, as the functionality of the vending machine is not otherwise implicated. *In re Mohapatra*, 2021 WL 408755, at *3 ("A claim does not cease to be abstract for section 101 purposes simply because the claim confines the abstract idea to a particular technological environment in order to effectuate a real-world benefit.").

Step (b) recites the use of a conventional application for performing a purchase that displays unspecified general information and allows unspecified general input.

---

[1] The lettering used in this section refers to the claim elements set forth in this Section IV.B.1.

Step (c) recites the use of conventional wireless technology to perform the abstract task of communicating.

Step (d) recites the use of generic technology to display that communication to a user and accept input from the user.

Similarly, step (e) recites the generic task of transmitting information regarding a transaction from a vending machine using generic and conventional wireless technology.

Finally, step (f) recites displaying or showing the transmitted information to the customer.

The claimed process of a purchaser and merchant communicating information about a purchase is an abstract idea dressed in conventional technical language.  It is no less abstract than a customer noticing a store, making a purchase, and receiving a receipt.  Tying the otherwise abstract claims of the patent to the physical world through inclusion of features like a "radio transceiver" or generic display and interface functions does not make the claim patent eligible.  *See Fort Props, Inc.*, 671 F.3d at 1322 ("an abstract concept cannot be transformed into patentable subject matter merely because of connections to the physical world").

For example, in *Ex Parte Latoya H. James*, the Board held ineligible claims directed to the use of a mobile device to wirelessly receive financial balance information and display it to the user. 2019 WL 2763407 at *4-6 (P.T.A.B. June 21, 2019).  The claims of the rejected application recited a "mobile telecommunications transceiver" for receiving and transmitting data, a "touch screen interface" for displaying financial information, and a separate "local network transceiver" for direct communication with a point of sale device.  *Id.*  The Board held that this conventional use of well-known communication technology did not render the concept of transmitting information about financial transactions non-abstract.  *Id.*

The Board cited Federal Circuit precedent noting "[a]s with the ineligible claimed invention in *BSG Tech. LLC*, 899 F.3d at 1284-91, the claimed invention does not improve a computer's functionality or that of its associated components, but rather the benefits flow from performing the abstract idea in conjunction with those generic computer components."  *Id.* at *12.  For the same reason, the claims of the '614 Patent should be rejected as being directed to an abstract concept.

The '614 Patent is practiced using well-known mobile devices to communicate in a conventional manner and to accomplish a transaction in a conventional manner.  The '614 Patent discusses that "vending machines," a type of "payment accepting unit," "have been around for thousands of years."  ECF No. 17-3 at 1:36-50.  The '614 Patent also notes "[t]hat there is a large

development effort around bringing mobile payment to the retail sector in an effort to not only provide options to the user, but also increased convenience." *Id.* at 2:3-6. The '614 Patent is directed to applying the technology already existing in mobile devices into the realm of the retail space. *Id.* at 5:56-58 ("The mobile-device-to-machine payment processing system disclosed herein focuses on the unattended retail space."). But, because using existing technology to implement a known process is directed to an abstract idea, the claims of the '614 Patent are only valid if there is an inventive concept. As demonstrated next, there is no inventive concept in the '614 Patent.

>    2.    *Alice* Step 2:  The '614 Patent Claims Do Not Add Inventive Concepts.

Courts routinely find that claims lack an inventive concept when, as here, the claims "require only off-the-shelf, conventional computer technology" or "conventional components and functions generic to electronic mobile devices." *Clarilogic, Inc.*, 681 Fed. Appx. at 954; *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d at 1331 (no "inventive solution" when claims are "implemented using the conventional components and functions generic to electronic mobile devices."); *Elec. Power Group*, 830 F.3d at 1353-56. Moreover, when there is no "improvement to computer functionality" (as is the case here), this leans against a finding of an inventive concept. *Tranxition,* 664 F. Appx. at 971; *see, e.g.*, *Affinity Labs*, 838 F.3d at 1262 (affirming dismissal of claims and finding no "'inventive concept' that transforms the abstract idea . . . where the claim simply recites the use of generic features of cellular telephones, such as a storage medium and a graphical user interface, as well as routine functions, such as transmitting and receiving signals, to implement the underlying idea").

The limitations recited in the '614 Patent claims do not add meaningful limitations that confine the abstract idea so that its use by others is not preempted. The claims of the '614 Patent are directed to a purchase transaction between a customer and a merchant. *See*, *e.g.*, ECF No. 17-3 at cl. 1. Given this abstract idea as foundation, the claims must add "significantly more" in order to become patent-eligible and cannot merely add "conventional or obvious" features. *Mayo*, 132 S. Ct. at 1294, 1299. The only additional features added in the claims of the '614 Patent are a "mobile device," "radio transceiver," and "a mobile payment application," all of which were well-known and widely-used long before the '614 Patent was filed. *See*, *e.g.*, ECF No. 17-3 at cl. 1.

The specification of the '614 Patent makes clear that the abstract communications concepts disclosed therein are not tied to a novel technological environment (*see*, *e.g.*, *id.* at 2:1-3, 9:19-22, 13:30-47), but rather cover a broad range of known message formats, mechanisms of communication, and wireless transmission protocols. These conventional uses of known technology to transmit and display information do not establish an inventive concept. *Elec. Power Grp., LLC*, 830 F.3d at 1354. The '614 Patent makes clear that the application technology covers known software functions. *Id.* at 9:4-6 ("The term "app' is used broadly to include any Software program(s) capable of implementing the features described herein.").

The '614 Patent claims do not claim any "improvement to computer functionality." *Tranxition,* 664 F. Appx. at 971. Conventional technical limitations used in a conventional manner do not add an inventive concept and cannot render the claims patent eligible.

### 3.   The '614 Dependent Claims Do Not Cure the Deficiencies of the Independent Claims.

Even if Plaintiff amended its Amended Complaint to assert infringement of any of the dependent claims, the Amended Complaint would still require dismissal. The dependent claims recite generic and conventional computer functions that render them unpatentable.

The dependent claims of the '614 Patent, like the independent claims, fail to transform the claimed abstract idea into a patentable invention. Each dependent claim recites "functions that are not inventive but simply constitute particular choices from within the range of existing content or hardware." *Affinity Labs*, 838 F.3d at 1264. While these limitations may narrow the independent claims, their "focus remains on the abstract idea" of conducting a financial transaction. *BSG Tech. LLC*, 899 F.3d at 1291, n.1.

Claims 2 and 21 merely recite that the mobile device displays a notification with one of a banner, flashing Light Emitting Diode (LED) or on-screen message. ECF No. 17-3 at cl. 2, 21. Claims 3 and 22 merely recite that the information indicates completion of a transaction. *Id.* at cl. 3, 22. Claims 4 and 23 recite that the transmitted message recited in the independent claims is a transaction confirmation message for the transaction and that the mobile device sends the message to a server. *Id.* at cl. 4, 23. Claims 5 and 24 merely recite that the message is a cancellation message. *Id.* at cl. 5, 24. Claims 6 and 25 recite that the message reflects a failure of the transaction. *Id.* at cl. 6, 25.

Claim 7 recites the use of a conventional mobile device having well-known proximity-determining technology to determine "whether the user is walking away." *Id.* at cl. 7. Claim 8

recites that the message "reflects a status of the transaction for a product stocked by the payment accepting unit" and thus reads on abstract information such as payment confirmation or transaction records confirming that the transaction has been completed. *Id.* at cl. 8. Claim 9 recites transmitting a coupon, an inherently abstract financial instrument. *Id.* at cl. 9. Claim 10 recites a generic notification by the interface of the mobile payment unit that a connection has been formed. *Id.* at cl. 10.

Claims 11 and 12 merely recite displaying an icon on the mobile device and receiving a swipe input on the icon. *Id.* at cl. 11, 12. Claim 13 recites that the predefined radio messages include generic "status" information. *Id.* at cl. 13. Claim 16 recites the use of a generic "payment module" that has short-range radio capabilities. *Id.* at cl. 16. Claim 17 recites the use of multiple transceivers. *Id.* at cl. 17. Claim 18 recites that the "payment accepting units" can be from a large group of potential examples, including toll booths, kiosks, or transit ticket dispensers. *Id.* at cl. 18. Claim 19 merely recites that the communication can use any of a wide range of known technologies such as infrared, Bluetooth, or radio frequency communications. *Id.* at cl. 19.

The '614 Patent claim limitations all either recite the transmission of entirely abstract financial or identifying information or utilize well known and conventional technology in a conventional manner. The transmission of generic abstract information does not add patentable subject matter to the claims. *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d at 1378-1380. Nor does the addition of conventional technical limitations render the claims patentable. Accordingly, even if Plaintiff had alleged infringement of any of the dependent claims, the dependent claims are also patent ineligible, thereby rendering futile any attempt to amend the Amended Complaint to add additional claims.

### C.    Claim Construction is Unnecessary to Resolve this Motion.

The Court need not defer this § 101 ruling until after claim construction. The Federal Circuit has stressed that "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Content Extraction*, 776 F.3d at 1349. In this case, "the basic character of the claimed subject matter is readily ascertainable from the face of the patent, and the parties' disputed constructions in no way affect the Court's analysis." *IPLearn-Focus, LLC v. Microsoft Corp.*, No. 14-cv-00151-JD, 2015 WL 4192092, at *3 (N.D. Cal. July 10, 2015); *see also Content Extraction*, 776 F.3d at 1349. Claim construction for the '833 and the '614 Patents

is irrelevant to the § 101 determination. *See Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, No. CV 17-5169-GW(FFMX), 2018 WL 2558385, at *8 (C.D. Cal. Feb. 12, 2018).

Specifically, the '833 and the '614 Patent claims are directed to abstract ideas regardless of whether the Court construes the claim terms broadly or narrowly. *See, e.g., Wireless Media Innovations v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 410 (D.N.J. 2015). "[T]he Federal Circuit has acknowledged that, for purposes of making a determination at the pleading stage, a district court may still consider a 12(b)(6) motion so long as the court construes the claim terms in the manner most favorable to the non-moving party, *i.e.*, the patent owner." *Cedars Sinai*, 2018 WL 2558385, at *8 (citations omitted).

**D.      Claims Other than Claim 1 for the Alleged Patents Should be Dismissed Because of Plaintiff's Failure to Allege Any Factual Basis For Those Claims.**

Moreover, the Amended Complaint does not meet the pleading standards of *Twombly*, 550 U.S. at 555, and *Iqbal*, 556 U.S. at 679, because the Amended Complaint does not allege a factual basis for Plaintiff's infringement claim for each of the claims of the Alleged Patents. *See, e.g. Werteks Closed Joint Stock Co.*, 2016 WL 5076169, at *3. Despite alleging infringement of "at least claim 1" of the Alleged Patents, the Amended Complaint does not attempt to allege any factual basis for infringement of any claim, other than claim 1, for any Alleged Patent. *See generally* ECF No. 17. KioSoft respectfully requests that the Court dismiss the Amended Complaint with regard to Counts I and III and dismiss Count II to the extent that Count II purports to allege infringement of any claims other than claim 1 of the '608 Patent.

**IV.      CONCLUSION**

The alleged '833 and '614 Patents claim only fundamental human processes and disclose non-technological improvements to those fundamental processes. Because such "inventions" are not eligible for patent protection and are unenforceable, the Amended Complaint (ECF No. 17) Counts I and III should be dismissed with prejudice. For all of the Alleged Patents, the Court should dismiss with prejudice all claims for which Plaintiff fails to allege any factual basis for infringement.

---

Dated: April 27, 2021             Respectfully submitted,

/s/ John A. Camp
John A. Camp
Florida Bar Number 848115
Ice Miller LLP
7300 Biscayne Boulevard, Suite 200
Miami, Florida 33138
Phone:  305-341-9055
John.Camp@icemiller.com

Holiday W. Banta, *pro hac vice*
Ice Miller LLP
One American Square, Suite 2900
Indianapolis, IN 46282
Phone: 317-236-5882
H.Banta@icemiller.com

T. Earl LeVere, pro hac vice
Ice Miller LLP
250 West Street, Suite 700
Columbus, OH 43215
Phone:  614-462-1095
Earl.LeVere@icemiller.com

Christian H. Robertson II, *pro hac vice*
Ice Miller LLP
200 Massachusetts Ave., NW, Suite 400
Washington, D.C. 20001
Phone: 202-807-4021
Christian.Robertson@icemiller.com

*Counsel for Defendants KioSoft Technologies, LLC*
*and TechTrex, Inc.*

## CERTIFICATE OF SERVICE

I, John Camp, do further certify that I have caused a true and correct copy of the Memorandum of Law in Support of Defendants KioSoft Technologies, LLC and TechTrex, Inc.'s Partial Motion to Dismiss Plaintiff's Amended Complaint to be filed through the Court's ECF system, which system has sent notice to all counsel of record.

This, the 27th day of April, 2021.

*/s/ John A. Camp*
John A. Camp

## SERVICE LIST

*PayRange Inc. v. KioSoft Technologies, LLC and TechTrex, Inc.*
Case No.: 1:20-cv-24342-RNS
United States District Court, Southern District of Florida

Joseph R. Englander
FOWLER WHITE BURNETT
1395 Brickell Avenue, 14th Floor
Miami, Florida 33131
Telephone: (305) 789-9259
Facsimile: (305) 728-7559
Email: jenglander@fowler-white.com

*Counsel for Plaintiff PayRange Inc.*

**VIA ECF**

James C. Yoon (PHV)
Ryan R. Smith (PHV)
Jamie Y. Otto (PHV)
Neil N. Desai (PHV)
George E. Powell III (PHV)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: jyoon@wsgr.com, rsmith@wsgr.com, jotto@wsgr.com, ndesai@wsgr.com, epowell@wsgr.com

**VIA ECF**